[No. 5963.]

## Morsch v. Lessig.

1. **Principal and Agent—Liability of Principal for Agent's Frauds**—The owner of chattels is not affected by a claim of ownership set up by his agent to whom he has entrusted them, the principal having no knowledge of such claim of ownership. —(171)

2. **Instructions**—Not based upon evidence error.—(171)

3. **Pledge by Agent, of Principal's Goods**—The owner is not affected by an unauthorized pledge of his goods by an agent to whom he has entrusted them.—(172)

*Appeal from Denver District Court*—Hon. Jesse G. Northcutt, Judge.

Mr. J. C. Murray and Mr. M. H. Kennedy, for appellant.

Mr. Geo. S. Redd, Mr. Geo. Stidger and Mr. Jno. B. Hutchinson, for appellee.

Mr. Justice Campbell delivered the opinion of the court:

This is an action to recover the possession of a "bike sulky." The only defense is that while the vehicle was in possession of G. C. Kern, under such circumstances as to justify the inference of his own-

ership, he pledged it to defendant for $56.00 due her from him for board-and $10.00 in money which she lent him. The material facts are that plaintiff, W. J. Morsch, who resides in Douglas, Wyoming, was the owner of the sulky. About the 1st of June, 1904, being also the owner of two race horses and personal property used therewith, Morsch sent the horses and their outfit to Overland Park in Denver in custody of G. C. Kern, who was his employee and the trainer and caretaker of his horses. On his arrival at Overland Park Kern engaged board of defendant, who was keeping a boarding house in the neighborhood, largely patronized by caretakers and trainers of race horses which were driven at the park. The defendant did not know plaintiff, but furnished Kern board and lent him money upon the supposition that Kern was the owner of the horses, solely because he was in possession. She never made any inquiry to ascertain the ownership, although she knew that the general custom was that the actual possession of such property during the racing season was not in their owners, but in trainers and caretakers. Kern remained at the park until the middle of October, 1904, and when he was about to leave, being indebted to defendant for board in the sum of $56.00 and $10.00 in money then lent him to be used, as he said, in buying feed for his horses and defraying his expenses in returning to Wyoming, he left the sulky with her as security for his debt. Morsch was present at Overland Park during the season for a few days about the middle of July or early in August, although his presence was unknown to defendant. Some of the witnesses who testified for plaintiff said that Kern represented himself as the owner of the race horses during the summer. When plaintiff was here, as testified to by one of plaintiff's witnesses, Kern told him Morsch was the owner. The sulky in

controversy was not used by Kern in driving or training plaintiff's horses. It was shipped by the manufacturers from Aurora, Illinois, to Denver, on plaintiff's order, and the testimony is not altogether harmonious whether it was consigned to plaintiff or Kern; some of the witnesses say that it was shipped to Kern, others that it was consigned directly to plaintiff. This, however, we do not consider important. There is no testimony that plaintiff furnished the board, or lent the money, to Kern, upon the strength of his ownership of this sulky, for it appears that she did not know that he was in possession of it, or claimed to own it, until he pledged it to her at the time he was preparing to leave after the bill for board was incurred and the money lent, and it is doubtful, too, if Kern ever was in actual possession of it. There is no evidence which tends to show that plaintiff occupied any such position in relation to his property that he knew, or as a prudent man ought to have known, that Kern was holding himself out to the public, or to defendant, as the owner of the horses or the sulky, if such was the fact. It appears, we think, without contradiction, that defendant furnished the board and lent the money, not knowing anything about the sulky, but supposing Kern was the owner of the horses, without making any inquiry whatever as to who the owner was, well knowing, as she says, that it was customary for caretakers and trainers, and not their owners, to have possession of such property during the racing season. The foregoing is a fair statement of the material facts in regard to which there is no conflict.

, The plaintiff has assigned numerous errors directed to the rulings upon evidence, but these we do not consider of sufficient importance to merit consideration, particularly in our view that there was prejudicial error in the instructions. After the

court had well instructed the jury that "naked possession of property is not evidence of ownership which justifies one in purchasing without further inquiry," and that "where an employee has the custody of property it cannot be presumed by his employer that he is going to represent himself to be the owner of it with authority to dispose of it," and the owner "is not presumed to have any knowledge of such representations, unless actual knowledge is brought home to him," it added: "or else he is in such position relative to the property and to the party making such representations, if such are made, that he ought, by the exercise of reasonable diligence, to have known of the representations, and to have countermanded them if he did not want them acted upon." In another instruction the court told the jury that if they believed that plaintiff was the real owner of the property and that he invested Kern with its actual possession and control and that plaintiff knowingly permitted Kern to hold himself out to the world as the owner, and upon the strength of such apparent ownership defendant gave credit to Kern and loaned him money, the verdict should be for the defendant.

In the latter instruction there was manifest error, because there is no evidence at all that plaintiff knowingly permitted Kern to hold himself out to the world as the owner. The instruction is also misleading and defective in that the court failed therein to tell the jury that defendant was not justified in taking the property as a pledge merely because Kern was in possession of it without making further inquiry.

The last part of the first instruction referred to above is wrong, not only for the reason just given as to the second, but also because plaintiff did not occupy such a position with respect to the property, so

far as the evidence discloses, that he ought, by the exercise of reasonable diligence, to have known that Kern was representing himself as owner. When here plaintiff never heard of such representations, if any there were, hence the instruction was not applicable to the facts of the case. If plaintiff can be held under such a state of facts as the evidence discloses, an owner of property would never be safe in entrusting it to the custody of an employee or agent.

Moreover, if Kern, as agent, was empowered by the owner to sell, this would not confer upon the agent authority to pledge it for his own debt. Defendant, however, disavows any claim that Kern was the agent of plaintiff with power to sell. Her only claim is that she supposed Kern was the owner merely because he was in possession. Up to the time she received the sulky as a pledge she did not, as already stated, know that Kern had represented himself as owner. Kern made no such representation to her, and those which he is said to have made to others as to the horses were not brought to her attention before she received the sulky as a pledge.

The judgment cannot be sustained. It is therefore reversed and the cause remanded.

*Reversed and remanded.*

Chief Justice Steele and Mr. Justice Musser concur.