No. 12,681.

First State Bank of Wiggins *v.* Simmons.
(13 P. [2d] 259)

Decided June 27, 1932.

Messrs. Johnson & Robinson, for plaintiff in error.

Mr. E. B. Simmons, for defendant in error.

*In Department.*

Mr. Justice Campbell delivered the opinion of the court.

A full statement of the material facts in this case will not only shorten the discussion but it is the best way to dispose of the controversy.

The Associated Seed Growers, a corporation, entered into a contract with M. L. Miller by the terms of which it delivered to him certain seeds and Miller agreed to act as bailee thereof for the purpose of raising a crop or crops of seeds therefrom which was to be redelivered to the seed company. Miller was to prepare the ground or soil for planting and was to plant approximately fifteen acres. The land on which the seed was planted belonged to a third party. Miller agreed to cultivate and care for the crop and harvest the same so as to secure the greatest possible return of seed suitable for seedsmen's use and to sack all such seed that was grown and deliver the same to the seed company at Masters, Colorado. The parties in their agreement referred to this contract as a bailment. It expressly provides that the seed which was furnished by the seed company to Miller, and the entire seed crop produced therefrom, were at all times to be the property of the seed company and it had the right of possession of the same at any time or, at its option, to harvest the crop or to cultivate the ground and deduct the cost of such cultivation from the compensation agreed to be paid to Miller for his services in planting and caring for the crop. The contract further provides that Miller shall have no right at any time to sell or dispose of the said stock seed furnished to him or the seed crop produced therefrom. As compensation for his services Miller was entitled to receive, and the seed company was required to pay him, at the rate of seven cents per pound for the crop grown.

After this seed contract was made the defendant in error here, Simmons, brought an action against Miller to recover on the latter's debt to him, and served a writ of garnishment upon the Associated Seed Company. The seed company made answer that there was owing to Miller under this seed contract the sum of $108.30. The plaintiff in error, the First State Bank of Wiggins, Colorado, intervened in this action and claimed the money which the seed company admitted it owed to Miller and based its claim upon a chattel mortgage given to it by Miller upon the crop produced.

The question for decision upon this review is whether the beans grown by Miller under the contract with the seed company are subject to the mortgage of the bank. Perhaps a better statement of the question is, did Miller have the right and power under his contract with the seed company to give a valid chattel mortgage on the prospective bean crop to the Wiggins Bank as against the claim and right which the seed company had thereto under its seed contract? We think Simmons' rights under his judgment against Miller are superior to that of the bank under its mortgage from Miller. Not only did the seed company and Miller designate the bean contract as a bailment, but a reading of the same makes it entirely clear that the transaction between the seed company and Miller was of that character. No property right in the crop to be grown passed under the contract from the seed company to Miller. It expressly provides that his interest under the contract is only the right to receive for his services to the seed company in caring for the crop a certain sum of money but it gave him no right whatever to the crop to be grown. In *Morsch v. Lessig,* 45 Colo. 168, 100 Pac. 431, we held that an owner is not affected by an unauthorized pledge of his goods by an agent to whom he has entrusted them. This contract between the Associated Seed Company and Miller was unquestionably a bailment. In *Clay, Robinson & Co. v. Martinez,* 74 Colo. 10, 218 Pac. 903, we held that the owner of bailed

property is not estopped to deny the ownership of the bailee because he permits the latter to enter into contracts with third parties concerning the same. We also held in that case that everyone deals with a bailee at his peril and, in the absence of special legislation to the contrary, one who deals with the bailee concerning the bailed property not only does so at his peril, but is charged with notice of its real ownership. See generally: 6 C. J. p. 1084, et seq.; Bouvier's Law Dict. Vol. 1, p. 313, et seq.; 3 R. C. L. p. 71, et seq., §§35, 66.

■ Applying this recognized doctrine of bailment to the present case we say that even though there might have been an equitable lien or assignment by Miller to the bank if the contract between the seed company and Miller was not a bailment, that doctrine is wholly inapplicable to the facts of this case because the contract between the seed company and Miller constituted a bailment. Since no property right in and to the crop that was grown under this contract was ever acquired by Miller, he had no right or power, as against the rights of the seed company or its assignee, to give a chattel mortgage on the crop to the bank which was his creditor. The judgment is therefore affirmed.

MR. CHIEF JUSTICE ADAMS and MR. JUSTICE ALTER concur.