Paul K. PETZOLDT and the First National Bank of Lander, a Wyoming Corporation, Plaintiffs,

v.

LAWRENCE WAREHOUSE COMPANY, a Corporation, Defendant

and

First National Bank of Fleming, Colorado, a National Banking Corporation, Intervenor.

Civ. No. 5051.

United States District Court

D. Colorado.

Dec. 23, 1957.

Smith & Nicholas, Lander, Wyo., and Robert Lipton, Denver, Colo., for plaintiff.

T. Raber Taylor, Denver, Colo., and Charles O. Butler, Chicago, Ill., for defendant.

Sandhouse & Sandhouse and Charles H. Sandhouse, Sterling, Colo., for intervenor.

ARRAJ, District Judge.

On May 27, 1955, plaintiff filed a replevin action in the State District Court in Logan County, Colorado, seeking to replevin from Platte Valley Elevators Company and the Lawrence Warehouse Company certain alfalfa seed which plaintiff had delivered to Platte Valley Elevators for storage and upon which seed Platte Valley Elevators had issued to the plaintiff Petzoldt its negotiable warehouse receipts; some of said warehouse receipts having been assigned to plaintiff First National Bank of Lander. This action was properly removed from the State District Court to this Court in apt time; Platte Valley Elevators were adjudged bankrupt and were dismissed from the action. The First National Bank of Fleming, Colorado intervened in the action claiming that it was the owner of the alfalfa seed by virtue of certain warehouse receipts issued to the bank by defendant Lawrence Warehouse Company. The bank also counterclaimed against plaintiffs, claiming wrongful replevin and cross-claimed against defendant Lawrence Warehouse Company for any damages which it (the bank) might sustain in the event that the Court should find the plaintiff to be the owner and entitled to the possession of the alfalfa seed in question. Lawrence Warehouse Company contends that the seed was delivered to it by Platte Valley Elevators under a warehousing agreement and that they had no notice of any claims by plaintiff to said seed until it was notified by plaintiff's attorney on May 23, 1955; it further contends that its position was that of a stakeholder and it claims no interest in the seed.

Defendant Platte Valley Elevators Company will be referred to as Platte Valley and Lawrence Warehouse Company as Lawrence.

The evidence discloses that in 1954, plaintiff Petzoldt was a farmer and rancher operating near Riverton, Wyoming, and that that year he produced considerable alfalfa seed. In the fall of 1954 a representative of the Platte Valley called at his ranch and negotiations were entered into between Petzoldt and the representative with the ultimate purpose in mind of selling plaintiff's alfalfa seed at the most beneficial price, through the Platte Valley's facilities. Between the latter part of November, 1954, and the early part of January, 1955, the seed was taken from the plaintiff's fields by trucks belonging to Platte Valley to Sterling, Colorado; and at that time the seed was in large bags containing approximately 120 pounds each.

During the time involved herein, Lawrence leased a portion of one of the buildings controlled by Platte Valley in Sterling, Colorado, and that leased portion was used by Lawrence for field warehousing. The seed was unloaded directly into the area leased by Lawrence and the sacks of seed were stacked in piles in their original bags; later the seed was cleaned and re-bagged in 60-pound sacks and again stacked in piles in the same area of the warehouse. When the seed was originally bagged on plaintiff's ranch in Wyoming, tags bearing the number "242", (which number was assigned to Petzoldt by the University of Wyoming for purposes of seed certification) were attached to the respective bags; and when the 120-pound bags were re-bagged into 60-pound bags, the seed tags bearing the number "242" were attached to approximately every other bag.

On November 29, 1954, on January 6, 7 and 8, 1955, Platte Valley Elevators issued its four negotiable warehouse re-

ceipts to Petzoldt for a substantial part of the seed; these receipts were subsequently assigned by Petzoldt to the First National Bank of Lander, Wyoming, as security for certain loans. There are also three other warehouse receipts issued by Platte Valley to Petzoldt, or his order, but which receipts, or the seed described therein, are not involved in this action.

At the request of Platte Valley, Lawrence issued to intervenor its six non-negotiable warehouse receipts dated November 16 and 29, 1954, and January 26, February 21, March 18 and April 5, 1955, respectively. These receipts apparently covered the same seed as did the receipts issued by Platte Valley to Petzoldt. Plaintiff did not know of the existence of the Lawrence receipts until on or about May 23, 1955. On that date he made demand, through his attorney, on said Lawrence for the alfalfa seed delivered by him to Platte Valley and covered by its warehouse receipts. That demand was refused by Lawrence on the grounds that intervenor claimed the same seed and Lawrence wanted a reasonable time to determine the validity of the adverse claims. Plaintiff then filed its suit and caused a writ of replevin to be served by the Sheriff of Logan County; said Sheriff executed the writ of replevin by taking constructive possession of 52,380 pounds of alfalfa seed in the Lawrence warehouse; said writ was served by the Sheriff placing a written notice of the replevy on the respective stacks of seed bags. He did not take the seed physically into his possession nor did he deliver the seed to the plaintiff. It appears from the files that no re-delivery bond was made by any of the defendants.

After the commencement of this suit, the seed in dispute was sold under stipulation of the parties and a Court Order based thereon, and the proceeds of said sale amounting to $13,392.53 were deposited in the registry of this Court, to be paid out on final disposition of this action.

The first issue to be determined is:

*Was the transaction by which plaintiff Petzoldt transferred the seed to Platte Valley a sale or a bailment?*

The Court finds that transaction was a bailment. Although the correspondence between plaintiff Petzoldt and Platte Valley showed an arrangement for determining the price to be paid him for the seed, it also discloses that he had the option to accept any price offered to the Platte Valley or to obtain his own price. The final decision remained with plaintiff and Platte Valley Elevators did not have authority to effect a sale without plaintiff's prior approval—that indicates a bailment. See Burke v. Boulder Milling and Elevator Company, 1925, 77 Colo. 230, 235 P. 574. 6 Am.Jur. 210 and cases collected at 54 A.L.R. 1170. The fact that negotiable warehouse receipts were issued to Petzoldt is also inconsistent with the theory that the transaction was a sale, since in the ordinary course of business such receipts are generally accepted as evidence of title and right to possession. The language of the receipts, stating that the goods are "received * * * for *storage* * * * to be delivered to holder" (emphasis supplied) and placing the risk of loss on the depositor, further indicates a bailment transaction. 54 A.L.R. 1169. Finally, the fact that the seed was bagged and tagged with plaintiff's allocated number "242" and, at least initially, kept separate from other seed, indicates that neither party regarded it as fungible. Whether it could have been so regarded is not necessary to determine in this instance, because there was no evidence of any authority to so regard the seed and the Platte Valley clearly was not authorized to commingle the seed in the absence of that authority. C.R.S. 1953, 146-2-16.

Inasmuch as the intervenor appears to be in the position similar to an innocent purchaser in good faith for value, the next question to be determined is:

*"Whether intervenor or plaintiff is entitled to the proceeds from the sale of*

*the seed, which proceeds are in the registry of the Court."*

■ Unless there are grounds for estoppel of a bailor to assert his title the general rule is that a subsequent transfer by a bailee does not divest bailor's title, even though the transfer is made to an innocent purchaser in good faith and for value and the bailor is entitled to recover the property or its value from the transferee. 6 Am.Jur. 262, 441.

■ However, mere possession by the bailee of bailed goods is not sufficient to estop bailor from asserting his title against third parties. First State Bank of Wiggins v. Simmons, 1932, 91 Colo. 160, 13 P.2d 259; Clay, Robinson and Co. v. Martinez, 1923, 74 Colo. 10, 218 P. 903; nor is authority to sell the goods where the transfer is in violation of the agreement authorizing the sale. Cannon v. Atlanta Warehouse Company, 25 Ga. App. 350, 103 S.E. 186. There were no other facts in the instant case which would warrant an estoppel.

■ The seed in question here was sufficiently identified to enable Petzoldt to recover the proceeds of the sale thereof; plaintiff is entitled to those funds.

Some of the seed originally deposited by plaintiff with Platte Valley has not been accounted for; however that seed has not been sufficiently traced to defendant Lawrence to enable plaintiff to recover the value thereof.

Having determined that plaintiffs are entitled to the proceeds of the sale of the seed in custody of the Court, the next question to be determined is:

*"What damages, if any are plaintiffs entitled to recover for defendant's allegedly wrongfully withholding possession of the seed?"*

■ The Court file and the evidence in the case disclose that plaintiff demanded possession of the seed from defendant on May 23, 1955, and approximately four days later the writ of replevin was served. There is no showing as to the difference in the value of the alfalfa seed on May 23, 1955, and on May 27, 1955. Under the usual and ordinary procedure in a replevin case, when the property is levied on by the sheriff, he holds the same for 48 hours; if during that period, the defendant furnishes him with a re-delivery bond the property is then delivered to the defendant. If the defendant does not furnish such bond in such period the property is then delivered to the plaintiff. In the instant case this property could and should have been delivered to the plaintiff at the expiration of 48 hours after the levy by the sheriff; apparently this was not done. And further there has been no evidence in the case showing that plaintiffs made any effort to require the sheriff to make actual physical delivery of the seed to plaintiffs. It therefore appears that possession was withheld from the plaintiffs by the defendants, after the demand was made, for a period of some six days, and there being insufficient evidence to show what, if any, damages the plaintiffs sustained during that period, the Court finds that the plaintiff is entitled to no damages for such alleged unlawful detention.

■ Both the plaintiff and the intervenor have made claims against defendant Lawrence for damages for its failure to deliver the seed when demanded; but it is apparent that defendant Lawrence would be liable under either of these claims only if it were under duty to deliver at the time demand was made or at some subsequent time. Lawrence relied on C.R.S. 1953, 146–2–11 which provides:

"If someone other than the depositor or person claiming under him has a claim to the title or possession of the goods, and the warehouseman has information of such claims, the warehouseman shall be excused from liability for refusing to deliver the goods, either to the depositor or to the person claiming under him or to the adverse claimant until the warehouseman has had a reasonable time to ascertain the validity of the adverse claims or to bring legal proceedings to compel all claimants to interplead."

The intent of this statute, obviously, is to protect warehousemen from situations whereby they would be required to determine adverse claims at their peril; and it covers the situation here. Adverse claims were made on defendant Lawrence for the seed and its possession and the seed was replevied within a few days thereafter. Under the statute, defendant Lawrence was under no duty to deliver to either claimant until the lapse of a reasonable time; its sole duty, after demand was made, was either to compel interpleader or to make reasonable efforts to investigate the validity of the adverse claims. See 93 C.J.S. Warehousemen & Safe Depositaries, § 53, p. 484. However, before defendant had time to determine the claims or to interplead the claimants in a Court action, the seed was replevied and therefore was no longer under defendant's control. For subsequent non-delivery, when it was no longer in its power to do so, defendant could be under no liability. As stated in 93 C.J.S. Warehousemen & Safe Depositaries § 53, p. 481:

"A warehouseman may excuse his failure to deliver property by showing that it has been taken under judicial process and that he gave due notice to the depositor, or made reasonable efforts to do so."

Since defendant Lawrence was under no duty to deliver to either party at the time of their demands and under no duty to deliver to intervenor at any subsequent time, there is no basis for liability under either of these claims.

■ The Court is of the opinion that there is no liability from defendant Lawrence to intervenor under the warehousing receipts issued by it to said intervenor. It has been settled law since Insurance Company v. Kiger, 1880, 103 U.S. 352, 26 L.Ed. 433, that a warehouseman is not the guarantor of title to goods for which he gave a receipt and is not liable for failure of the title thereunder; there is nothing in the Uniform Warehouse Receipts Act to change this. In the Kiger case, supra, the plaintiff, a planter, shipped cotton to his factor to hold for further direction and better prices; the factor stored the cotton in a warehouse, obtained a loan from the defendant secured by a receipt on plaintiff's cotton and then went bankrupt. The Court held that the warehouseman's liability to the defendant was just as if the defendant had stored the property himself and taken back the receipts. Defendant got by the receipts only such interest in the property as the factor could convey and nothing more.

Inasmuch as this opinion contains a statement of the facts as found by the Court and the Court's conclusions thereon, the Court is of the opinion that no formal findings of fact and conclusions of law need be entered.

An appropriate judgment will be entered ordering, adjudging, and decreeing that

1. Plaintiff shall be paid the $13,392.-53 now in the Registry of the Court in this action.

2. Said payment to plaintiffs shall be in full satisfaction of all its claims against all the adverse parties in this suit.

3. Intervenor's complaint in intervention be dismissed.

4. Intervenor's cross-claim against defendant Lawrence Warehouse Company be dismissed, and,

5. Each party pay his own costs.