FIRST NATIONAL BANK OF FLEMING, Colorado, a National Banking corporation, Appellant,

v.

Paul K. PETZOLDT; First National Bank of Lander, a Wyoming corporation; and Lawrence Warehouse Company, a corporation, Appellees.

No. 5867.

United States Court of Appeals Tenth Circuit.

Dec. 9, 1958.

Charles H. Sandhouse, Sterling, Colo. (Sandhouse & Sandhouse, Sterling, Colo., were with him on the brief), for appellant.

W. J. Nicholas, Lander, Wyo. (W. A. Smith, Lander, Wyo., and Robert Lipton, Denver, Colo., were with him on the brief), for appellees Paul K. Petzoldt and First Nat. Bank of Lander.

Charles O. Butler, Chicago, Ill. (T. Raber Taylor, Denver, Colo., was with him on the brief), for appellee Lawrence Warehouse Co.

Before BRATTON, Chief Judge, and HUXMAN and LEWIS, Circuit Judges.

LEWIS, Circuit Judge.

This appeal necessitates the determination of the respective rights of the parties to warehoused seed which was commingled by the warehouseman but remained, notwithstanding such commingling, capable of identification.

The action was instituted by appellees Petzoldt and First National Bank of Lander as a state court action in replevin wherein possessory recovery was sought from Lawrence Warehouse Company [1] of certain alfalfa seed stored in that company's warehouse. A writ of replevin ensued and the county sheriff took constructive possession of 52,380 pounds of seed claimed in the action to be the property of Petzoldt and the Lander Bank. Timely and proper removal of the action was made to the United States District Court for the District of Colorado. Thereafter present appellant, First National Bank of Fleming, Colorado, was granted leave to intervene upon an assertion of an interest in the subject seed and an independent claim for damages against the warehouseman Lawrence for failure to deliver seed to the intervenor as holder of certain warehouse receipts.

Trial was to the court and resulted in a judgment favoring plaintiffs below and present appellees Petzoldt and Lander Bank in replevin and dismissing the complaint of the Fleming Bank against Lawrence Warehouse for damages. The judgment of the trial court, D.C., 157 F. Supp. 184, is premised upon findings that paramount title to the subject seed existed in Petzoldt and the Lander Bank and that the asserted cause of action of the Fleming Bank, being based upon a claim of that bank to ownership of the identical seed, failed as against the warehouseman Lawrence. The present appeal requires separate consideration of each aspect of the judgment below, first, as to the judgment favoring Petzoldt and Lander Bank [2] in replevin and, second, the dismissal of the claim of appellant against the Lawrence Warehouse. Both require an understanding of a somewhat complicated factual background.

In 1954, Petzoldt operated a farm and ranch near Riverton, Wyoming, from which he harvested a large quantity of alfalfa seed. During the fall of that year, he entered negotiations with Platte Valley Elevators Company to arrange for the processing and sale of his seed. The resulting agreement required that Platte Valley handle the cleaning, transporting, sacking, storing and selling of the seed through its facilities in Sterling, Colorado. The parties were to divide the profit from the sale based on specified prices, but it was provided that Petzoldt could accept any price offered to Platte Valley or, at his option, find his own buyer.[3]

In the latter part of 1954, while the seed was still in Petzoldt's fields, it was inspected and certified by representatives of the University of Wyoming and placed in large bags each containing approximately 120 pounds of seed. The inspectors tagged each bag by attaching a card with the number "242" on it to identify the producer [4] and then, pursuant to

---

1. Platte Valley Elevators was also an original defendant but was subsequently adjudicated a bankrupt and dismissed from the suit.

2. Petzoldt and the Lander Bank have identical interests and may hereinafter be referred to as Petzoldt.

3. Appellant does not challenge the trial court determination that this was a contract of bailment.

4. Petzoldt's uncontradicted testimony indicates that:

   "Certified seed" is more marketable than other seed because it is inspected by public authority and certified as having a high percent of germination and low content of noxious weeds and inert matter. The University of Wyoming certification program under which his seed was certified requires that a lot number be assigned to each grower and that each

the contract terms, the bags were loaded on Platte Valley trucks and transported to the Platte Valley facilities in Sterling, Colorado.

Prior to the time of the negotiation of the Petzoldt-Platte Valley bailment contract, Platte Valley leased part of one of its buildings at Sterling, Colorado, to Lawrence. This leased area was to be used by Lawrence for field warehousing, and it appears that Lawrence only warehoused commodities received from Platte Valley, not holding itself out as a public warehouse. The asserted purpose for this leasing arrangement was to enable Platte Valley to deposit its own commodities in the Lawrence warehouse and receive in return non-negotiable warehouse receipts from Lawrence to be used as collateral security when Platte Valley sought credit from various lending institutions.

When Petzoldt's seed arrived in Sterling, it was unloaded directly from the Platte Valley trucks into the Lawrence warehouse area. The crop consisted of several kinds of alfalfa seed and the 120-pound bags were stacked in piles which were separated according to kind. At a later date, Platte Valley moved portable equipment into the Lawrence area and cleaned the seed to prepare it for market. The seed was at that time re-bagged into 60-pound sacks and again stacked in the respective piles in the Lawrence area. During the cleaning operation, the certification tags with the number "242" were removed from the original 120-pound bags and re-attached as far as possible to the 60-pound bags, a tag with the certification number "242" being then attached to approximately every other bag. When the sacks were re-stacked after cleaning this alternating condition of identification persisted.

Four negotiable warehouse receipts covering a substantial part of the seed were issued by Platte Valley to Petzoldt on November 29, 1954, and January 6, 7, and 8, 1955. These receipts were subsequently assigned by Petzoldt to Lander Bank as security for loans advanced to him. Other warehouse receipts were issued to Petzoldt by Platte Valley, but they are not here involved.

Pursuant to the lease arrangement with Lawrence, Platte Valley requested Lawrence to issue non-negotiable warehouse receipts to Fleming Bank. Eight receipts were thus issued by Lawrence to Fleming Bank dated November 10, 16 and 29, 1954, and January 20 and 26, February 21, March 18, and April 5, 1955. Some of these receipts called for a stated number of bags of certified Buffalo Wyoming alfalfa seed, others simply for certified Wyoming alfalfa seed. Each set forth the declared value of the product but described the seed with no further particularity. It should be noted here that some of the receipts were issued prior to the earliest date of the Petzoldt Platte Valley receipts.

In warehousing the seed, Lawrence did not segregate it by depositor lot or by grower. Certified seed was separated from uncertified and then stacked by kind. Thus, certified Buffalo Wyoming alfalfa seed grown by Petzoldt was stacked as convenience demanded with certified Buffalo Wyoming alfalfa seed grown by and bearing the certification number of other growers. Delivery demands were met by Lawrence by kind only and the depositor received, but by substitution, the amount and quality of seed evidenced by the particular receipt.

On May 23, 1955, Petzoldt learned of the issuance of the Lawrence receipts to the Fleming Bank and immediately made demand on Lawrence for the alfalfa seed delivered by him to Platte Valley as shown by the receipts issued by Platte Valley to him. Lawrence refused de-

---

bag of seed be marked with his identification number before it leaves the fields. The identifying number accompanies the seed onto the market and serves to indicate to the buyer who the grower was and the location of the field in which the particular seed grew. Pamphlets containing a list of the growers, their lot numbers and information about their seed are circulated to buyers throughout the United States to facilitate the determination of who raised the seed.

livery upon claim that it needed a reasonable time to determine the validity of the demand as against the rival claim of the Fleming Bank. The state court replevin action then was instituted and the execution of the writ by the sheriff followed. The subject matter of the writ was described by kind and quantity, e. g., 42,240 pounds of Wyoming Buffalo alfalfa seed, 10,800 pounds of Wyoming Ranger alfalfa seed, etc., but was not further described. In aid of execution both Petzoldt and one Schrum, a Lawrence employee who had conducted the cleaning and rebagging process, pointed out to the sheriff those bags bearing Petzoldt's certification number and those unmarked bags in which Schrum had placed seed grown by Petzoldt. The sheriff thereupon took constructive possession of the seed presently involved.[5]

Appellant protests each procedural and substantive step leading to the entry of judgment favoring Petzoldt. It is first urged that the writ of replevin must fail because it lacked the requisite certainty of identification. Since the writ was issued under the jurisdiction of a Colorado state court we look to that state for determinative authority. In Hook v. Fenner, 18 Colo. 283, 32 P. 614, 615, the Colorado Supreme Court considered the sufficiency of the following property description in a writ of replevin: "Two thousand pounds of oats, more or less, now situated in a certain granary, on the premises now occupied by defendants." This was held adequate, the Court stating:

> "While certainty in the description of property should be required in replevin, it would be unreasonable to require greater certainty of description than the property will reasonably admit of."

We deem the alfalfa seed herein described to be at least as carefully detailed as the oats in the cited case.

Appellant next contends that the evidence does not support the trial court's finding that the seed actually seized by the sheriff was properly identified as that grown and claimed by Petzoldt. We find no merit to this contention. The very purpose of the certification tags placed upon the seed by the University of Wyoming was to preserve identification of the grower. This method of identification survived the cleaning of the seed and the re-bagging upon alternate bags. The unmarked bags were identified as containing Petzoldt-grown seed by the person who actually re-bagged the product. The value of such outside help in identifying property when executing a writ of replevin is not without recognition. Foredice v. Rinehart, 11 Or. 208, 8 P. 285.

Fleming Bank also attacks as error the holding that Petzoldt established his title to the replevied seed. It argues that Petzoldt relied solely upon the warehouse receipts from Platte Valley as proving his ownership of the seed and that this was ineffective as proof of title because those warehouse receipts were invalid. To support this contention, appellant relies on the rule expressed at 93 C.J.S. Warehousemen & Safe Depositaries § 18, p. 421 to the effect that a warehouseman cannot issue a valid warehouse receipt on goods not in his possession. It points out that when the seed arrived in Sterling it was unloaded from the trucks directly into the Lawrence warehouse and urges that since the Platte Valley receipts were issued while Lawrence possessed the seed they were invalid. As further proof of the invalidity of the Platte Valley receipts, appellant avers that since there is no evidence that Platte Valley operated a public warehouse for profit it cannot be assumed to be a warehouseman authorized to issue

---

**5.** This seed, by agreement between the parties, was subsequently sold and the proceeds of the sale, $13,392.53, paid into the registry of the court. Other seed in the warehouse at the time of execution of the writ of replevin but not identified as subject to the writ has been delivered to the apparent satisfaction of the parties. The Fleming Bank received some of such seed.

warehouse receipts within the Colorado statutes.[6]

These arguments are premised on the false assumption that respondents rely *solely* on the Platte Valley receipts as proof of ownership. Such was not the case. As we read the record, the respondents made it clear from the outset that Petzoldt's claim of ownership of the seed antedated any transfer to Platte Valley; that his ownership persisted after Platte Valley took possession of the seed; and that the warehouse receipts were relied on merely as evidence of the transfer to Platte Valley for storage purposes.

Having established his original title, the transfer of the possession of the seed to Platte Valley, and the ultimate location of the property within the Lawrence warehouse Petzoldt completed his evidentiary burden. It is true that while testifying on cross-examination, Petzoldt was asked whether he based his claim on the warehouse receipts or upon the terms of the written agreement he had with Platte Valley and that he answered that he based his claim on the receipts. However, such a response under cross-examination can hardly be viewed as limiting or removing from the case the other evidence introduced to support his claim of ownership. Petzoldt never claimed to be the owner of the seed "through" the warehouse receipts. He claimed, as the grower of the seed, that he had never lost title to it. Appellant makes no claim that Petzoldt lost title to the seed. In fact it leaves unassailed the trial court holding that the transfer to Platte Valley was a bailment with title remaining in Petzoldt. The validity or invalidity of the Platte Valley receipts can in no way influence the purport of the other evidence of ownership contained in the record. Since this is an action in replevin for return of goods and not in action for enforcement of warehouse receipts we fail to see how the technical validity of the receipts has any material bearing on the claim to title.

■■ Appellant finally contends that appellees are estopped to claim title to the seed. It asserts the well-recognized principle that a true owner of property may be estopped to set up his title where he has permitted another to hold himself out as owner to the prejudice of an innocent person. Although appellant cites authorities sustaining this proposition, it leaves the question without making reference to any evidence which could sustain an estoppel here. It is settled law that to succeed on a theory of estoppel the party setting forth the estoppel has the burden of proving every element essential to the estoppel. Commissioner of Internal Revenue v. Union Pac. R. Co., 2 Cir., 86 F.2d 637; Van Antwerp v. United States, 9 Cir., 92 F.2d 871. He must also prove facts sufficient to form the basis for application of that theory, United States v. Dickinson, 1 Cir., 95 F.2d 65. Upon an examination of the record, we find no evidence of deceit or negligence on the part of Petzoldt and nothing indicates that he permitted Platte Valley to hold itself out as owner of the seed. The trial court correctly resolved this issue in stating that:

"* * * mere possession by the bailee of bailed goods is not sufficient to estop [the] bailor from asserting his title against third parties. First State Bank of Wiggins v. Simmons, 1932, 91 Colo. 160, 13 P.2d 259; Clay, Robinson and Co. v. Martinez, 1923, 74 Colo. 10, 218 P. 903; nor is authority to sell the goods where the transfer is in violation of the agreement authorizing the sale. Cannon v. Atlanta Warehouse Company, 25 Ga.App. 350, 103 S.E. 186. There were no other facts in the instant case which would warrant an estoppel." 157 F.Supp. 184, at page 188.

6. Section 146-5-3, C.R.S.1953, defines "warehouseman" as: "* * * [A] person lawfully engaged in the business of storing goods for profit."

We conclude that the trial court properly allowed recovery to appellee Petzoldt and pass now to consideration of the court's action in dismissing the complaint of Fleming Bank against Lawrence.

 A warehouseman does not guarantee title to particular goods received by and receipted for by him; and he may be relieved of the duty of re-delivery to depositor or his assignee when the property is taken from him by judicial process establishing paramount title in one other than the receipt holder. See 93 C.J.S. Warehousemen & Safe Depositaries § 53, p. 481. Application of these fundamentals makes simple disposition of Fleming Bank's claim against Lawrence but is dependent, so says appellant, upon a finding that the seed replevied by Petzoldt is the identical seed called for by the receipts issued by Lawrence to Fleming Bank. The trial court found such to be the fact, stating in his opinion (157 F.Supp. at page 187): "These receipts apparently covered the same seed as did the receipts issued by Platte Valley to Petzoldt."

Although we agree with appellant's contention that the record will not support the quoted finding of the trial court [7] we nevertheless deem the judgment of that court to be correct. In stacking and delivering certified seed indiscriminately as to growers, Lawrence was acting within the terms of its written agreement with the depositor, Platte Valley. This agreement provided:

"It is mutually agreed that all commodities of like description stored pursuant to this agreement may each be warehoused as one general lot of fungible goods, and that the holder of a warehouse receipt shall be entitled to such portion of each such general lot as the amount of each commodity represented by such receipt bears to the whole of such general lot of such commodity."

7. As we have earlier pointed out, the receipts issued by Lawrence called for seed by kind and quality only and in some

It is undisputed that Lawrence issued receipts only for seed actually in its possession at the time of issuance of such receipts and delivered seed only to those persons entitled thereto. This showing, together with the adjudication of title to the seed remaining in the warehouse at the time of appellant's demand, constitutes a complete accounting explaining the lawful inability of the warehouse to honor appellant's receipts. The situation is comparable to that where fungible goods are lost by act of God. The prima facie case of the receipt-holder made by proof of non-delivery is completely overcome by a showing that the quantity of fungible goods has been depleted without fault upon the part of the warehouseman.

Affirmed.

instances antedated the Platte Valley-Petzoldt receipts.