No. 21055.

JOE ROSENTHAL *v.* WILLIAM C. WHITEHEAD.
(413 P.2d 909)

Decided April 18, 1966. May 23, 1966, on Petition for Rehearing, Addendum filed and Rehearing denied.

566

PAUL SNYDER, for plaintiff in error.

HIESTER, TANNER & CLANAHAN, CHARLES B. LINDLEY, for defendant in error.

*En Banc.*

MR. JUSTICE MCWILLIAMS delivered the opinion of the Court.

THIS writ of error presents a dispute between Joe Rosenthal and William Whitehead with reference to the ownership and right to possession of a certain Kramer diesel tractor.

Succinctly stated, the controversy stems from the fact that the tractor in question was purportedly pledged to Whitehead by one Riordan at a time when there was a chattel mortgage of record on the tractor in favor of Rosenthal.

Riordan and his associate, Morrison, obtained a personal loan of some $1,300 from Whitehead, an Arapahoe County rancher, and in return therefor executed and delivered to Whitehead three promissory notes totaling $1,500. It was as security for the repayment of these three notes that Riordan and Morrison purportedly pledged the tractor to Whitehead. When Riordan and Morrison defaulted in the payment of these three notes, Whitehead brought an action in foreclosure against them, seeking not only a money judgment but also an order that the "pledged" tractor be sold by the sheriff at public sale with the proceeds of such sale to be then

applied on the indebtedness of Riordan and Morrison to him. Default judgment was duly rendered against Riordan and Morrison in favor of Whitehead and the sheriff was directed to sell the tractor at public sale.

Thereafter, Rosenthal, apparently unaware of Whitehead's foreclosure proceeding, brought an action in conversion against Whitehead, alleging that he (Rosenthal) was the owner of the tractor and entitled to the possession thereof, and that Whitehead had converted the same to his own use without any "right or justification." Rosenthal sought damages in the sum of some $4,800.

Upon becoming aware of the pending foreclosure action theretofore brought by Whitehead, Rosenthal sought and obtained permission to intervene in that proceeding. Without objection the issues framed by the complaint in intervention and the answer thereto were consolidated for the purposes of trial with the conversion suit. A trial to the court culminated in a total victory for Whitehead, to the end that the trial court found in favor of Whitehead and against Rosenthal both as to the latter's conversion suit and his complaint in intervention. Rosenthal now seeks reversal of these adverse judgments.

In essence, the trial court's findings were that Riordan and his running mate, Morrison, were agents for Rosenthal with the authority to "sell or mortgage" the tractor to Whitehead, and that under these circumstances Rosenthal's chattel mortgage was not valid and enforceable against Whitehead as concerns the tractor then in his possession.

It is at once to be noted that though the trial court found that Riordan and Morrison were agents for Rosenthal with either the actual or apparent authority to "sell or mortgage" the tractor, there was *no* finding that Riordan and Morrison had any authority, be it express or implied, to *pledge* the tractor. As we read the record, it is very doubtful that there is competent evidence to support the finding that Riordan and Morrison were agents for Rosenthal with either the express or implied

authority to "sell or mortgage" the tractor. Be that as it may, we find absolutely nothing, however, which would even remotely tend to indicate that Riordan and Morrison had any authority whatsoever to *pledge* the tractor as security for the repayment of their personal loan from Whitehead.

■ The general rule is that an agent has the authority to pledge his principal's property only where such authority is conferred expressly or arises upon the "clearest and most positive implication." See 2 C.J.S. 1307.

■■ In a like vein it is equally well-settled that a person with authority to sell his principal's chattel usually has no apparent authority or implied authority to pledge the goods, either in his own interest or in the interest of his principal, in the absence of any circumstance involving some element of estoppel. And similarly it is stated that the power to mortgage does not include by implication the power to pledge. See in this general regard *Silberfeld v. Solomon,* 70 Colo. 413, 202 Pac. 113; *Morsch v. Lessig,* 45 Colo. 168, 100 Pac. 431; 49 A.L.R.2d p. 1271; and 3 Am. Jur.2d pp. 524-525.

■ Assuming then for the sake of argument that there is evidence to support the finding that Riordan and Morrison were agents for Rosenthal with actual or apparent authority to "sell or mortgage" the tractor, there is still *no* evidence which would establish, or even begin to establish, that they had any authority to *pledge* the tractor. Such then being the case, it must follow — as does the night the day — that Whitehead did not acquire any right, title or interest of any nature in and to the tractor as a result of his dealings with Riordan. This is so for the reason that Riordan, in a very real sense, had no more right to pledge the tractor to Whitehead than, for example, would a thief. Had a thief pledged the tractor to Whitehead, it would be quite clear that Whitehead would have acquired no interest in the tractor. And Riordan having no authority — be it express or im-

plied — to pledge the tractor, is in no better position in this regard.

■ Whitehead having *no* lawful right, title or interest in the tractor, we next turn our attention to Rosenthal, in an effort to ascertain whether he has sufficient interest to maintain his action in conversion. Rosenthal, of course, must rely on the strength of his own interest in the tractor and not the weakness of his adversary. *Kranz v. Rubush,* 120 Colo. 264, 209 P.2d 555.

As already noted, the chattel mortgage was filed in the office of the clerk and recorder in the City and County of Denver on June 9, 1961. Whitehead suggests that the chattel mortgage should not have been filed in the City and County of Denver, but on the contrary should have been filed in Arapahoe County, which is where his ranch is located. In thus contending Whitehead is in error.

■■ C.R.S. 1963, 21-1-4, provides that a chattel mortgage "shall be filed or recorded in the office of the clerk and recorder of the county where the mortgaged property is situated." There is absolutely no evidence that the subject tractor was located in Arapahoe County as of the date the chattel mortgage was recorded in the office of the clerk and recorder in the City and County of Denver. Rather, all of the evidence indicates that as of that particular date the tractor was physically located in the yards of the Interstate Motor Lines in Denver. Hence, under the aforementioned statute the mortgage was properly to be filed with the office of the clerk and recorder in Denver, and not Arapahoe County. And the fact that some six weeks later, or thereabouts, the tractor was first taken from the City and County of Denver to Byers, Colorado, located in Arapahoe County, and then to Whitehead's ranch, also situate in Arapahoe County, in nowise changes the situation. See *Rocky Mountain Seed Company v. McArthur,* 85 Colo. 1, 272 Pac. 1117.

■■ As regards Rosenthal's interest in the subject

tractor, it is deemed essential to keep clearly in mind the basic theory of chattel mortgages in Colorado, namely that legal title to mortgaged property vests in the mortgagee, and until default the mortgagor has the right to possession of the property and the right to perform his contract and thereby revest himself with the legal title; but when the conditions of the chattel mortgage are breached, the legal title then becomes absolute in the mortgagee, subject only to redemption rights of the mortgagor. *Newman v. People, ex rel.,* 4 Colo. App. 46, 34 Pac. 1006 and *Sorrells v. Sigel-Campion,* 27 Colo. App. 154, 148 Pac. 279. See, also, Hellerstein, Chattel Mortgages in Colorado, p. 74 (6th ed.). So, as of August 24, 1961, the date when the mortgagor defaulted on its note and breached the conditions of the chattel mortgage, Rosenthal, as the assignee of the original mortgagee, not only held legal title to the tractor, but as of that date had the right to the possession thereof. Accordingly, he could have maintained a replevin action to recover the tractor, or sue in conversion when Whitehead subsequently refused to return the tractor.

Nor is Whitehead's position under the circumstances in anywise enhanced by Rosenthal's failure to file a mortgage status statement, as provided for by C.R.S. 1963, 21-1-5. Failure to file a mortgage status statement when required may well render the mortgage unenforceable as against the *rights* of third parties. But in the instant case, for the reasons already stated, Whitehead has no *rights* in and to the tractor which he received from Riordan. In other words, as regards Whitehead, Rosenthal is still the owner and the person who is entitled to possession of the tractor, though because of his failure to file a mortgage status statement Rosenthal's rights in this regard might very well not be valid and enforceable against the *rights* of third persons. A chattel mortgage is valid and enforceable between the parties thereto until the indebtedness secured thereby is paid or barred by the statute of limitations. C.R.S.

1963, 21-1-8. Hence, Rosenthal's rights under the chattel mortgage were still valid and enforceable against the mortgagor. And it is equally true that Rosenthal's rights in this regard were also valid and enforceable against Whitehead, who under the circumstances never had any right, title or interest of any nature in and to the tractor.

For these reasons, the judgments are reversed and the causes remanded for further proceedings consonant with the views herein expressed.

On Petition for Rehearing.

MR. JUSTICE McWILLIAMS:

Although Whitehead's petition for rehearing may not represent a complete change in position, nevertheless in our view it does represent a rather decided change in emphasis. In his petition Whitehead suggests that this is not an instance where Riordan and Morrison attempted to "pledge" the tractor in question to him as security for the repayment of his loan to them, but that under the circumstances disclosed by the record Riordan and Morrison on the contrary actually "mortgaged" the tractor to him as security for repayment of the loan. In other words, Whitehead is said to hold a chattel mortgage on the tractor. We do not so view the matter.

It is asserted that the trial court "found that Whitehead held a chattel mortgage on the subject tractor . . . ." We are unable to divine any such finding by the trial court. As a matter of fact, though the trial court did find that Riordan and Morrison had the "apparent authority to sell or mortgage" the tractor, the trial court rather conspicuously failed to make any finding as to whether Riordan and Morrison either "sold," "mortgaged" or "pledged" the tractor to Whitehead.

Be that as it may, our re-examination of this record convinces us that as a matter of law Riordan and Morrison did not "mortgage" the tractor in favor of Whitehead, but on the contrary merely purported to

"pledge" the tractor to Whitehead as security for the repayment of the money which they borrowed from him. The petition for rehearing is denied.