No. 16,647.

PANHANDLE PIPE AND SUPPLY COMPANY *v.* PRESSEY & SON.

(243 P. [2d] 756)

Decided April 7, 1952.

Mr. GARRETT A. FONDA, Messrs. SEAVY & SEAVY, for plaintiff in error.

Mr. ROY A. PAYTON, for defendant in error.

*In Department.*

MR. JUSTICE CLARK delivered the opinion of the court.

PLAINTIFF in error, plaintiff below, filed an action in replevin against defendant to recover possession of a quantity of pipe of the type commonly used as well-casing. Defendant joined issue on plaintiff's complaint and counterclaimed for the value of the pipe. The case

was tried to a jury resulting in a verdict against plaintiff on its complaint and in favor of the defendant on its counterclaim in the amount of $1,850, and the trial court entered judgment in accordance therewith. All parties to the action are dealers in secondhand or used well drilling supplies, appliances and equipment.

On March 31, 1949, one L. S. Oliver, then a resident of Lamar, Colorado, went to Borger, Texas, where plaintiff conducted its business, and negotiated with it for the purchase of the pipe in question at an agreed price of $2,491.86 delivered at Boise City, Oklahoma, with the understanding and condition that upon delivery, the purchase price was to be paid in full. A sales ticket was made out on the usual form used by plaintiff in the conduct of its business showing the quantities and prices of the various types and grades of pipe included in the transaction, a carbon copy of which on a yellow sheet was delivered to Oliver on the following day.

On April 1, 1949, the pipe was loaded upon one of plaintiff's trucks which was driven by Sid French, an employee of plaintiff, to Boise City, where he met Oliver who had a truck and driver available for the transfer of the pipe. At this point the pipe was unloaded from plaintiff's truck and placed upon the truck made available by Oliver; the yellow copy of the sales ticket was delivered to Oliver and he affixed his signature to the original, presumably as a receipt; thereupon French, plaintiff's truck driver, demanded payment in full for the pipe, but Oliver explained that because of his having to leave Lamar so early that morning, he had been unable to secure a cashier's check with which to pay for the pipe, and suggested that he be permitted to take the pipe to Lamar promising to send a cashier's check in full payment for the same by return mail. French declined to accede to this suggestion without first contacting some member of the firm of his employment. He testified that on his first attempt he was unable to get the telephone call through. He then invited Oliver and his truck

driver to have lunch with him, but Oliver declined, stating that they had eaten a short time previously. French stated that he then went to lunch alone; made further effort to complete the telephone call to his employer; and that upon his return to the location where the transfer had been made, the pipe, Oliver and everyone else connected with the transaction were gone. On the following day Oliver appeared at the office of defendant in Pueblo, Colorado, and after some negotiation, sold to it all of the pipe procured the preceding day from plaintiff, except one joint which he delivered to his truck driver. In payment for the pipe so delivered to defendant, Oliver received from the latter three checks, so made at his direction, for the total amount of $1,663.75.

Upon learning from its truck driver, French, that Oliver had left Boise City with the pipe without paying for it, plaintiff began a search for the same, but was unable to find Oliver, who had immediately thereafter left Colorado, was absent for several months, and plaintiff did not find the pipe for some ten days or two weeks, when it was located in defendant's yard. Defendant was in no way or manner involved with Oliver in his scheme for procuring the pipe, but had purchased it from him in the usual course of its business. Its officers frankly related all its part of the transaction to plaintiff, but insisted that since it had purchased the pipe fairly, it was entitled to retain possession as the rightful owner thereof.

Except in minor details the facts as above outlined were not seriously disputed by anyone, including Oliver. There is, however, the further question interjected into the case by Oliver which is seriously disputed and upon the issue thus presented the evidence is in direct conflict. Oliver, called as a witness on behalf of defendant, while admitting that he had suggested to plaintiff's truck driver, French, that he would prefer to pay for the pipe by bank draft which he would send from Lamar on the following day, further testified that when French re-

fused to agree to such modification of his orders, he thereupon contacted Mrs. Oliver, who had accompanied him to Boise City, and that she paid French in cash in full for the pipe. Mrs. Oliver, also called as a witness on behalf of defendant, testified that she paid French cash in full for the pipe, by direction of her husband. Both Oliver and his wife further stated that French then wrote the word "paid" on the yellow duplicate of the sales ticket, which was not produced and was claimed to have been lost. French positively denies that he ever saw Mrs. Oliver at Boise City, and insists that he received no payment whatsoever for the pipe from anyone.

Plaintiff's specification of points of error may be classified as those relating to, (1) Instructions given; (2) instructions tendered by plaintiff and refused; and (3) rulings upon evidence offered by and on behalf of plaintiff.

Counsel for plaintiff timely objected to instructions numbered 4, 6, 7 and 8 given by the court to the jury.

Instruction No. 4 reads as follows: "You are instructed that one who gains possession of personal property by stealth with intention not to pay for same, acquires no title thereto."

We do not say that this instruction is technically incorrect; neither can we approve it because, in our view, it is not sufficiently illuminating. Instructions should be couched in language clearly understandable, wherever circumstances permit, rather than in unusual terms which lead to guesswork and speculation on the part of the jurors. In this instance it would have been much clearer had the court used the terms trickery, artifice, deception, or similarly descriptive words to fit the situation, rather than the word stealth.

Instruction No. 6 is as follows: "You are instructed that as between two persons equally innocent, a loss resulting from the fraud of another shall fall upon the one *whose act or omission made the fraud possible.* If in this case you find and believe from a preponderance

of the evidence that fraud was committed by L. S. Oliver in procuring the pipe from the Panhandle Company, and the Panhandle Company *was in any way responsible for the fraud,* if any, committed by Oliver, and because of the fraud, if any, either the Panhandle Company or Pressey & Son must stand a loss, and if you further believe that Pressey & Son acted in good faith, then your verdict should be for the defendants." (Emphasis supplied) This instruction presumably is based upon the equitable principle that where one of two innocent persons must suffer for the fraud of a third, the loss should fall on him who, by his imprudence, negligence or culpability, enabled such third person to commit the fraud. Under such circumstances the title of the buyer is said to be not void but merely voidable, and the seller, in order to recover the merchandise, must act with reasonable promptness to rescind the contract, and before the rights of innocent third parties, without notice, intervene. This equitable rule in fraud cases is, in most instances, said to be based upon the *doctrine of estoppel,* the theory being that the seller has by his imprudence, if not by some voluntary act on his part, permitted or placed within the power of the vendee such appearance of ownership that one dealing with him might reasonably have the right to assume that he was the lawful owner and possessor of said articles. The rule has no application unless there is an actual completed sale of the property in the first instance by the original seller. Even though one may by fraud secure possession, he has no title or, as stated in the Uniform Sales Act, (S.L. '41, c. 228), no property.

By instruction 7 the Court told the jury that if they believed from the evidence that the pipe "was purchased" from plaintiff by Oliver and thereafter sold to defendant for valuable consideration and without notice, the verdict should be for defendant. By instruction No. 8 the converse of the same proposition was stated when the court instructed the jurors that if they believed from

the evidence that plaintiff "made a sale" to Oliver, the verdict should be for defendant.

Under the facts presented by the record in this case, all three of instructions numbers 6, 7 and 8, are fatally erroneous, number 6 for reasons we have already discussed, and for further reasons which apply equally to instructions numbered 7 and 8.

The very issue to be determined by the trial of this case was the question of whether or not there was a sale of the pipe from plaintiff to Oliver, and not the effect of such a sale if made. The Uniform Sales Act, S.L. '41, c. 228, part II, §18 (1), contains a provision that where there is a contract to sell specific goods, as here, "the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred"; and that, "(2) For the purpose of ascertaining the intention of the parties, regard shall be had to the terms of the contract, the conduct of the parties, usages of trade and the circumstances of the case."

In the present case there is no disagreement concerning the terms of the contract between plaintiff and Oliver. It is clear that by the terms the merchandise was to be paid for in full upon delivery at Boise City, Oklahoma, and this fact is not disputed; it, therefore, remains equally clear that the property in the pipe was not to be transferred to Oliver unless and until payment in full was made by him. Unless this contract was amended, qualified, or in some manner changed (and it is not contended that it was), the only way which Oliver could rightfully come into title or property of this merchandise was by payment pursuant to the terms of the agreement. Payment, it is true, was one of the issues which the jury was required to determine, but whether it based its verdict upon payment or upon the theory of some of these erroneous instructions, we cannot know.

This cause apparently was tried largely on the theory that it was one primarily involving fraud, whereas the true issue in the case is one of title. From the

record as made it would appear clear that two primary questions are involved. It may be said, first, that if the testimony of Oliver and Mrs. Oliver to the effect that they paid plaintiff's truck driver, French, in full for the pipe, is to be believed, then undoubtedly Oliver had good title and had full right to pass the same on to defendant, and judgment should be in defendant's favor. Secondly, if reliance be placed upon evidence adduced on behalf of plaintiff, then no voluntary delivery of the pipe to Oliver was ever effected, and he never at any time had title. Regardless of how innocent and how bona fide the defendant as purchaser may be, it is not protected against the claim of the true owner of the pipe where the possession thereof had been obtained surreptitiously and wrongfully without any delivery by or consent on the part of the true owner. *Heishman v. Hope,* 79 Colo. 1, 242 Pac. 782. Possession alone is not sufficient evidence of ownership to justify one in believing that the possessor has title, or to warrant reliance thereon as a defense against the true owner. *Morsch v. Lessig,* 45 Colo. 168, 100 Pac. 431; approved in *First State Bank v. Simmons,* 91 Colo. 160, 162, 13 P. (2d) 259; *Silberfeld v. Solomon,* 70 Colo. 413, 202 Pac. 113. One without title to property can convey no title. *Smith Premier Typewriter Co. v. Stidger,* 18 Colo. App. 261, 71 Pac. 400; *First State Bank of Brandon v. Kohl,* 79 Colo. 620, 624, 247 Pac. 571. "Subject to the provisions of this act, where goods are sold by a person who is not the owner thereof, and who does not sell them under the authority or with the consent of the owner, the buyer acquires no better title to the goods than the seller had, unless the owner of the goods is by his conduct precluded from denying the seller's authority to sell." Uniform Sales Act, S.L. '41, c. 228, §23 (1). In Texas, where negotiations on the pipe first opened, the rule is the same. *Ewing v. Sylvester,* 94 S.W. 405; *Menke v. First National Bank,* 206 S.W. 693.

Likewise, the courts of Oklahoma, the jurisdiction

within which the pipe involved in this case actually changed hands, support the rule which we have been discussing. Several Oklahoma cases might be cited to this effect, but we mention only one: *Arnold v. Gambrel,* 64 Okla. 283, 167 Pac. 630. We quote from page 285 of the official report: "The evidence here is that this sale was for cash, and a sale for cash is prima facie upon condition that the title to the property sold does not pass to the purchaser until the cash has been received, unless its receipt has been subsequently waived by the seller; and, in such a sale upon such a condition that has not been fulfilled, the seller may recover the property from the buyer or any party in possession who has no greater equity than the buyer, provided he properly asserts his right to do so within a reasonable time under all the facts and circumstances of the case." (citing a number of cases)

Texts and encyclopedias indicate that the rule is quite general, if not practically universal, and it is apparent that an attempt here to relate the substance of the decisions of many jurisdictions would unduly lengthen this opinion. To illustrate the point, however, we mention the following taken at random from widely separated jurisdictions. In the case of *Johnson v. Iankovetz,* 57 Ore. 24, 110 Pac. 398, after relating the circumstances of a cash sale, and stating that no title will pass, even to an innocent purchaser for value from the vendee, unless the circumstances show that the vendor waived his right to immediate payment, at page 30 the court said: "There is a distinction between a sale, induced by fraud, in which the vendor, in ignorance of the fraud, transfers the title and possession, in which the sale is voidable, but not void, and an innocent purchaser from the vendee may acquire a good title [citing cases]; and a case in which the vendor does not intend to part with the title until the price is paid, the delivery and payment being concurrent acts, and although the goods are delivered to the vendee, yet, without payment, no title will pass.

In the one case it is intended that the title shall pass; in the other, that it shall not." Cited with approval by the Supreme Court of Oregon in 1951 in *Plummer v. Kingsley*, 190 Ore. 378, 383, 226 P. (2d) 297, 303.

A leading case on the subject appears to be that entitled *Gustafson v. Equitable Loan Association*, 186 Minn. 236, 243 N.W. 106, in which the Supreme Court of Minnesota, among other things, said:

"In the absence of evidence indicating that credit is to be given, a sale is presumed to be for cash. In the instant case it was expressly stated that the sale was to be for cash. Payment and delivery in the sale of personal property are concurrent and mutually dependent acts. If the payment is evaded by the purchaser upon getting possession of the property, the seller may immediately reclaim the property; the title in such case not passing to the purchaser, the delivery being merely conditional, and the purchaser taking simply as trustee for the seller until the condition is performed.

\* \* \*

"Defendant, still erroneously assuming that Madden acquired title to the diamond, makes the claim that where one of two innocent parties may suffer loss due to the fraud of a third person, he must bear the loss whose action enabled the wrong to be done.

"It would perhaps be a sufficient answer to say that Madden never acquired title. But there are circumstances wherein the seller is estopped from asserting that the delivery was conditional as against a subvendee in good faith for value who purchases in reliance upon the vendee's muniments of title. For a time the rule seems to have been that a bona fide purchaser for value without notice was protected even where his vendor obtained the goods by fraud, if the fraudulent act was a felony by statute only and was not such as would have been a felony at common law. [citing cases] But the modern rule is that where the owner of personal property so clothes another with indicia of title as to deceive a bona fide

purchaser relying upon such indicia of title, the purchaser will be protected against the true owner. [citing cases]

"The rule now under consideration does not depend upon actual title, but rests upon the conduct of the party which precludes him for disputing, as against the innocent acting person, the existence of the title or power which through negligence or mistaken confidence he caused or allowed to appear to be vested in the third party. In order that the real owner of personal property may be estopped from asserting his title against a person who has dealt with one in possession in faith of his apparent ownership, it is the general rule that something more than mere possession and control is necessary. The authorities indicate that possession must be accompanied by indicia of title. [citing cases]"

The Gustafson case, supra, is cited with approval and quoted from at some length by the Supreme Court of Minnesota in *Moberg v. Commercial Credit Corporation,* 230 Minn. 469, 42 N.W. (2d) 54, 58. Likewise therein is defined the meaning of the term "equitable estoppel." See, also, *De Vries v. Sig Ellingson & Co.,* 100 F. Supp. 781.

In the light of the foregoing authorities it is, therefore, clear that even if it be considered that the pipe transaction with which we are here concerned was permeated with fraud from its very inception, the record of the evidence in the case is insufficient to justify any finding or verdict based upon equitable estoppel; hence, the jury should not have been instructed thereon. Mere possession of personalty fraudulently obtained is not alone enough to protect a good-faith purchaser against the demands of the defrauded owner. "The authorities indicate that possession must be accompanied by indicia of title. *Gustafson v. Equitable Loan Association, supra.* In the instant case it is contended that all Oliver had, in addition to bare possession of the pipe, was a yellow copy of the sales ticket, and the Junior Mr. Pressey, with

whom Oliver dealt, testified, and it is admitted by Oliver himself, that he not only did not deliver that to defendant, but that he actually concealed from Mr. Pressey the very part of it that would have put him on guard, namely, the price. Oliver neither had nor delivered to defendant any muniment of title whatsoever.

■ Furthermore, the doctrine of equitable estoppel, if reliance is placed thereon to defeat the claim of one alleging himself to be the rightful owner, is a distinct and separate defense, which is required to be specially pleaded and proven.

What we have said with reference to the instructions given over plaintiff's objection, and contained within our first classification, substantially disposes of the second classification. Tendered instruction No. 3, refused by the court, is a correct rule of law, ordinarily not sufficiently complete, however, to be given as an instruction. Tendered instruction No. 4 should have been given, either as tendered or in similar form. Tendered instruction No. 5, we believe, was sufficiently covered by instructions given by the court.

Since it is unlikely that the evidence will be presented upon retrial in the same manner or in the same order as at the former trial, we deem it unnecessary to now rule upon specifications directed to those items contained in our third classification.

The judgment of the trial court is reversed and the case remanded for further proceedings consistent with the views herein expressed.

MR. CHIEF JUSTICE JACKSON, MR. JUSTICE MOORE and MR. JUSTICE KNAUSS concur.