TOM W. CARPENTER EQUIPMENT COMPANY, Inc., a Texas corporation, Plaintiff-Appellee,

v.

GENERAL ELECTRIC CREDIT CORPORATION, a New York corporation, Defendant-Appellant.

No. 10–69.

United States Court of Appeals Tenth Circuit.

Oct. 24, 1969.

———◇———

Richard A. Lonnquist, Denver, Colo. (Abe L. Hoffman, Denver, Colo., with him on the brief), for plaintiff-appellee.

Stephen A. Hellerstein, Denver, Colo. (F. J. Manning, Denver, Colo., with him on the briefs), for defendant-appellant.

Before MURRAH, PICKETT and HICKEY, Circuit Judges.

PICKETT, Circuit Judge.

Tom W. Carpenter Equipment Company, Inc., a Texas corporation, doing business at Amarillo, Texas, alleging ownership of a large construction machine, sued appellant General Electric Credit Corporation for conversion of the equipment. General Electric claimed title to the equipment through a third party in possession thereof. The trial court found for the plaintiff and entered judgment for the amount found to be the reasonable value of the equipment.

On April 24, 1965 Carpenter, who was engaged in the business of renting, selling, servicing and repairing construction equipment, purchased a new tractor-loader from the Allis-Chalmers Manufac-

turing Company. The evidence of ownership obtained by Carpenter from Allis-Chalmers was the dealer's invoice, a bill of lading, the dealer's settlement transmittal, and the canceled check for the purchase price.[1] Carpenter directed Allis-Chalmers to ship the tractor-loader to Fred H. Linneman, Inc., whose business was principally that of excavating and laying pipelines in the vicinity of Denver, Colorado. On May 6, 1965, after delivery of the equipment, a "Machinery Lease Agreement" was entered into between Carpenter and Linneman. The agreement provided that Linneman was to pay Carpenter a monthly rental of $950 for eleven consecutive months beginning June 6, 1965. The agreement further provided that on May 6, 1966 a twelfth and final payment was to be made in the amount of $19,974.38. Carpenter testified that the final payment was for the purpose of allowing Linneman an opportunity to renegotiate the lease; that he did not expect the final lump-sum payment to be made. Linneman had rented equipment from Carpenter on prior occasions under similar agreements.

During the month of August 1965 Linneman, whose need for the use of the machine had not materialized, was authorized by Carpenter to deliver the equipment to Fincham Equipment Company of Denver, Colorado, a new and used equipment dealer, for leasing purposes. Carpenter knew the nature of Fincham's business, but authorized delivery of the equipment with the understanding that it was to be leased to one of Fincham's customers for a short period of time.[2] The record does not disclose whether Carpenter had any dealings with Fincham with reference to the equipment prior to the transfer of possession from Linneman to Fincham. The $950 monthly rental payments were thereafter made to Carpenter by Fincham in the manner provided for in the agreement between Carpenter and Linneman, but there was no evidence of an assignment of the lease to Fincham.

On September 7, 1965, without the knowledge or consent of Carpenter, Fincham sold the tractor-loader to Tri-State Drilling Company on a lease purchase arrangement. On the same day, Fincham assigned the Tri-State contract to General Electric, which duly filed financing statements in Colorado, Montana and Idaho because Tri-State moved the tractor-loader from place to place. Fincham had no title to the property when the sale was consummated.

On January 23, 1966 Carpenter and Fincham entered into a "Machinery Lease Agreement" similar to the Linneman contract, providing for six consecutive monthly payments of $950 per month beginning February 23, 1966, with a seventh and final payment of $19,814.57 due August 23, 1966. When this transaction was consummated Carpenter did not know that Fincham had sold the equipment in September 1965 and had received payment in full.

On November 24, 1966 General Electric Credit Corporation repossessed the tractor-loader from Tri-State in Idaho, returned it to Colorado, and stored it with Power Motive Corporation.[3] On

---

1. There was evidence that this was the customary method of transferring title to a purchaser of new equipment from a manufacturer.

2. Upon questioning by the court, Carpenter testified as follows:
   "THE COURT: You figured I am sure that Fincham was going to lease out this equipment?
   THE WITNESS: Yes. This was my understanding from Mr. Linneman; that Mr. Fincham desired to lease this for a month or two to one of his customers.

   THE COURT: Well then, when you executed the lease to Fincham you expected Fincham to deal in this in some way?
   THE WITNESS: Well, I understood he would continue to lease it to some of his customers, yes, sir.
   THE COURT: Was he authorized to sell it?
   THE WITNESS: No, sir."

3. Power Motive Corporation was made a defendant in the action but makes no claim to the property.

November 25, 1966 Tri-State filed a bankruptcy petition in the United States District Court for the District of Colorado. In the bankruptcy proceeding of Tri-State, Carpenter filed a petition to reclaim the tractor-loader and served notice thereof upon General Electric. General Electric disregarded the notice and did not contest Carpenter's petition or in any manner appear in the bankruptcy proceeding, although General Electric was listed as a secured creditor. When the bankruptcy court entered judgment in favor of Carpenter, General Electric was in possession and control of the tractor-loader, as it had been during the bankruptcy proceedings. It does not appear from the record whether Carpenter had knowledge of the sale to Tri-State or the claim of General Electric until after the institution of the bankruptcy proceedings.

The court concluded that "Fincham had no legal power to create a title by virtue of possession of the equipment; mere possession does not create an indicia of ownership, nor are there present other facts which would create a waiver of estoppel to bar plaintiff's claim to title, and the court would not be justified in holding that the plaintiff through negligence misled the defendant, General Electric Credit Corporation." The validity of this finding and conclusion is the primary issue presented on this appeal.

It is the contention of General Electric that when Carpenter consented to Fincham's possession of the equipment, knowing Fincham to be a dealer in like equipment, Carpenter is estopped to deny the title of an innocent purchaser for value from Fincham.

■ The Colorado courts have recognized the general rule that the owner of personal property cannot assert his title against an innocent purchaser for value from a third person in whom the owner has voluntarily entrusted the possession of the property with apparent authority to sell. Finance Corporation v. Bauer, Colo., 448 P.2d 791; General Credit Corp. v. Bill Olsen's Motor, Inc., 147 Colo. 227, 363 P.2d 489; Shockley v. Hill, 91 Colo. 451, 15 P.2d 623; Moore v. Ellison, 82 Colo. 478, 261 P. 461.

■ The essential elements of estoppel must be pleaded and proved.[4] The burden of proving all the essential elements of estoppel is upon the party asserting it. First National Bank of Fleming v. Petzolt, 10 Cir., 262 F.2d 540, 545; Panhandle Pipe & Supply Co. v. S. W. Pressey & Son, 125 Colo. 355, 243 P.2d 756; Susman v. Exchange Nat. Bank of Colorado Springs, 117 Colo. 12, 183 P.2d 571.[5]

■■ When Fincham sold the equipment to Tri-State he had no title or evidence of title. He sold property that did not belong to him without the consent of the owner. There is no evidence that Carpenter authorized or knew that the equipment was to be taken to Fincham's sales lot to be placed with like equipment that was for sale. He did not know it was on the lot, if it was.[6] The only element of estoppel which was proven was that Fincham was in possession of the equipment with the consent of the owner. There is a total lack of evidence to show that Fincham was clothed with apparent authority to sell. Estoppel is not established by proof of mere possession. In Avis Rent-A-Car System v. Woelfel, 155 Colo. 207, 393 P.2d 551, the court said:

"Nor does any principal (sic) of estoppel apply under the circumstances

---

4. Estoppel was not pleaded as a defense but it was brought into the trial without objection and generally the case was tried and decided upon that issue.

5. The cases treating the quantum or degree of proof necessary to establish an equitable estoppel are collected in an annotation in 4 A.L.R.3d 361.

6. The only evidence relating to Fincham's possession of the machine was that of the president of Tri-State, who testified that prior to its purchase it was at Fincham's where "it was out in front of his display; out in front of his office."

of this case. The plaintiff did nothing to clothe Stevens with indicia of ownership; it merely gave him possession of the automobile in the regular course of its business. Possession alone is not sufficient evidence of ownership to justify the belief that the possessor has title or to warrant reliance thereon as a defense. Morsch v. Lessig, 45 Colo. 168, 100 P. 431; Silberfeld v. Solomon, 70 Colo. 413, 202 P. 113; Panhandle Pipe & Supply Co. v. S. W. Pressey & Son, supra. Clearly, title did not devolve upon the defendants through the transactions initiated by Stevens' crime."

See also Panhandle Pipe & Supply Co. v. S. W. Pressey & Son, *supra;* Standard Motor Co. v. American Loan System, 120 Colo. 311, 209 P.2d 264, and cases cited; Silberfeld v. Solomon, 70 Colo. 413, 202 P. 113.

█ General Electric urges that the trial court's valuation of Carpenter's machine at $17,000 is not supported by the evidence. Carpenter, with long experience in the purchase and sale of like machinery, testified that the reasonable market value was approximately $20,000 after making necessary repairs. Qualified witnesses for General Electric fixed the value as high as $12,000 and as low as $7,500. We are bound by the trial court's findings if supported by substantial evidence and not clearly erroneous. Rule 52(a), Fed.R.Civ.P.; McMahon v. Carribean Mills Company, 10 Cir., 332 F.2d 641; Transportation Insurance Company v. Hamilton, 10 Cir., 316 F.2d 294; Imperial Paving Company v. Horn's Crane Service Company, 10 Cir., 316 F.2d 28. The court's finding of value was well within the scope of competent evidence and is not clearly erroneous. Wilsey-Bennett Trucking Company v. Frost, 10 Cir., 275 F.2d 144; Carlson v. McNeil, 114 Colo. 78, 162 P. 2d 226.

Affirmed.