Mark HAMILTON and Melvin Hamilton, Plaintiffs–Appellants,

v.

NOBLE ENERGY, INC., Defendant–Appellee.

No. 09CA0236.

Colorado Court of Appeals, Div. IV.

Sept. 17, 2009.

---

§ 24–51–1105, C.R.S.2008.

Mark Hamilton, Pro Se.

Melvin Hamilton, Pro Se.

Holland & Hart LLP, Anthony J. Shaheen, Christopher A. Chrisman, Denver, Colorado, for Defendant–Appellee.

Opinion by Chief Judge DAVIDSON.

This action concerns subsurface mineral interests, currently leased by defendant, Noble Energy, Inc., located in Weld County.

The issue raised is whether a "Declaration of Land Patent," filed here by plaintiffs, Mark and Melvin Hamilton, can alter or affect ownership of those mineral interests. Although there is no reported case in Colorado, numerous jurisdictions have held that such a "land patent" is a legal nullity which has no effect on existing ownership interests. The trial court agreed with those jurisdictions and dismissed plaintiffs' complaint seeking enforcement of the land patent against defendant's interests for failure to state a claim. We agree with the trial court and affirm.

## I. Background

Melvin Hamilton, along with Marlene Hamilton (not a party to this action), acquired real property by warranty deed dated September 4, 1980. By its terms, the deed conveyed the land and "related rights," subject to certain enumerated reservations which, as relevant here, included a fractional interest in the oil and mineral rights in the property currently leased by defendant. Specifically, the deed and the chain of title reflect that Melvin and Marlene Hamilton acquired a one-eighth ownership interest in the mineral rights, with the remaining interests reserved by the grantor and its predecessors. Mark Hamilton subsequently acquired his interest in the property via quitclaim deed.

On January 9, 2008, plaintiffs filed a document entitled "Declaration of Land Patent" with the Weld County Clerk and Recorder, which provided a legal description of the property and stated: "If this land patent is not challenged within sixty days (60), in a court of law by someone, or by the government, it then becomes my/our property."

Mark Hamilton then sent a letter to defendant, asserting that plaintiffs were now the sole owners of the mineral interests leased by defendant, and informing defendant that if it did not respond within ten days, "No Trespassing" signs would be posted and enforced.

In a written response, counsel for defendant informed plaintiffs that the "Declaration of Land Patent" they had filed was without legal effect and advised them to retain legal counsel.

Shortly thereafter, plaintiffs filed a complaint in Weld County District Court, which included a copy of the "Declaration of Land Patent" and a document setting forth the chain of title originating with an 1875 land patent issued by the United States Bureau of Land Management (BLM) to the Union Pacific Railroad Company (Railroad). Plaintiffs asserted that they had "absolute title" to the mineral interests by virtue of their "Declaration of Land Patent" which, they alleged, nullified all previous conveyances and reservations of the mineral interests and entitled them to all future royalties on oil and gas production from defendant's wells previously paid to others.

On defendant's C.R.C.P. 12(b)(5) motion, the trial court agreed with defendant that plaintiffs' filing of a land patent had no effect on existing property rights, including those of the other owners of the mineral interests leased by defendant, and dismissed the complaint. The trial court also granted defendant's request for attorney fees pursuant to section 13–17–102, C.R.S.2008, finding that plaintiffs "clearly knew or reasonably should have known that their complaint was substantially frivolous, substantially groundless, and substantially vexatious."

Plaintiffs appeal, contending that the trial court erred in dismissing their complaint because their "Declaration of Land Patent" was not "challenged within the sixty days (60) [p]rescribed by law" and, therefore, the interests claimed therein became the sole property of plaintiffs. We disagree.

## II. Standard of Review

■ Motions to dismiss brought under C.R.C.P. 12(b)(5) are viewed with disfavor and the trial court, in ruling on such a motion, must accept all facts of the complaint as true and determine whether, under any theory of law, the plaintiff could be entitled to some relief. *Rosenthal v. Dean Witter Reynolds, Inc.,* 908 P.2d 1095, 1099–100 (Colo.1995). Our review of the trial court's dismissal of plaintiffs' complaint for failure to state a claim is de novo. *See Verrier v. Colo. Dep't of Corr.,* 77 P.3d 875, 877 (Colo.App. 2003).

## III. Merits

We conclude that the trial court correctly determined that plaintiffs had no claim to any property right or interest based on the filing of their self-created "land patent."

■ A land patent is the instrument by which the federal government conveyed public lands to a private grantee. *Black's Law Dictionary* 1156 (8th ed.2004); *see Britt v. Fed. Land Bank Ass'n,* 153 Ill.App.3d 605, 106 Ill.Dec. 81, 505 N.E.2d 387, 392 (1987) (explaining that land patents were the means "by which the government passe[d] fee simple title of government land to private persons"); *Schell v. White,* 80 Ariz. 156, 294 P.2d 385, 388 (1956) (same). Here, the property at issue was conveyed via an original land patent issued by the BLM to the Railroad on April 24, 1875.

■ Once real property has been conveyed by a land patent, the grantee's rights in that property are fixed. *See, e.g., Ashley v. Hill,* 150 Colo. 563, 567, 375 P.2d 337, 339 (1962). Thus, the undisputed effect of the 1875 issuance of the patent from the BLM was to vest in the Railroad those rights in the property then possessed by the United States, which, as relevant here, included the mineral rights at issue. *See, e.g., Wilson Cypress Co. v. Pozo,* 236 U.S. 635, 648, 35 S.Ct. 446, 59 L.Ed. 758 (1915) (land patent is a deed of the United States and "its operation is that of a quitclaim," conveying whatever interest the government possessed in the land); *see also Burke v. Southern Pac. R.R. Co.,* 234 U.S. 669, 705–10, 34 S.Ct. 907, 58 L.Ed. 1527 (1914) (patent passes title to "mineral lands" unless they were identified as such before the patent was issued); *Thomas v. Union Pac. R.R. Co.,* 139 F.Supp. 588, 595 (D.Colo.1956) (although railroad land patents reserved "mineral lands," such reservation only applied to lands known to be mineral in character at the time of the grant and did not reserve mineral interests, including oil and gas, subsequently discovered), *aff'd,* 239 F.2d 641 (10th Cir.1956).

Plaintiffs do not disagree that the property, including reservations and encumbrances, was transferred from the Railroad and conveyed and encumbered numerous times since

then. Nor do plaintiffs claim that they possessed any rights in those mineral interests reserved by their grantor and its predecessors at the time they filed their "Declaration of Land Patent."

Nevertheless, plaintiffs assert, because the original patent conveyed title from the federal government, no state, including Colorado, had authority to allow subsequent encumbrances on that title and, therefore, only a land patent, such as their "Declaration of Land Patent," could convey "perfect title" in the mineral interests at issue here. Thus, according to plaintiffs, they are entitled to all of the royalty payments due to owners of the mineral interests leased by defendant. We do not agree.

As with any other piece of real property, real property conveyed by the federal government via land patent can be conveyed and burdened by subsequent interests, such as a reservation of mineral interests, by a party otherwise conveying all surface rights, or a lease of the same. *See Wisconsin v. Glick,* 782 F.2d 670, 672 (7th Cir.1986) (rejecting the argument that a land patent "forever bars" subsequent interests in the land); *Fed. Land Bank v. Gefroh,* 390 N.W.2d 46, 47 (N.D.1986) (same); *see also Grainger v. United States,* 197 Ct.Cl. 1018, 1018 (1972) (patent intended to "quiet title to and secure the enjoyment of the land for the patentees *and their successors*" (emphasis added)); *United States v. Budd,* 144 U.S. 154, 163, 12 S.Ct. 575, 36 L.Ed. 384 (1892) (patentee has unlimited power of alienation over the land following purchase from the government) (applying Timber and Stone Act of 1878).

These subsequent conveyances are governed, respectively, by applicable state law. *Packer v. Bird,* 137 U.S. 661, 669, 11 S.Ct. 210, 34 L.Ed. 819 (1891) (once the patent has issued, "whatever incidents or rights attach to the ownership of property conveyed by the government will be determined by the states"); *see also Oneida Indian Nation v. Oneida County,* 414 U.S. 661, 676–77, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974) ("[o]nce patent issues, the incidents of ownership are, for the most part, matters of local property law to be vindicated in local courts"). This is so because each state has the power "to provide for and protect individual rights to the soil within its confines" in furtherance of the general welfare of society based on the security of title to real estate. *Am. Land Co. v. Zeiss,* 219 U.S. 47, 60, 31 S.Ct. 200, 55 L.Ed. 82 (1911); *see also United States v. Fox,* 94 U.S. 315, 320, 24 L.Ed. 192 (1876) (means of acquiring and transferring real property is the exclusive domain of "the government within whose jurisdiction the property is situated"); *Arndt v. Griggs,* 134 U.S. 316, 320–21, 10 S.Ct. 557, 33 L.Ed. 918 (1890) (same).

█ Here, plaintiffs do not contend that other claims to the reserved mineral interests at issue were not acquired in conformity with applicable Colorado law. Indeed, by relying on what they submitted as the chain of title to the property, plaintiffs necessarily admitted the existence of the reservation of the mineral interests as reflected in the warranty deed, under which plaintiffs took title to the surface rights and one eighth of the mineral interests of the property. *See, e.g.,* § 38–35–108, C.R.S.2008 (deed referencing other instruments affecting title to said real property binds the parties to that instrument); *Adelson v. Bd. of County Commr's,* 875 P.2d 1387, 1389 (Colo.App.1993) (the purchaser is charged with notice of documents of record included in the chain of title). And it is not disputed that the reserved mineral interests were owned by others, as shown by the chain of title, prior to plaintiffs' filing of their "Declaration of Land Patent."

Thus, plaintiffs could not, by merely filing a self-created, self-described "land patent" that says, in effect, "we own the described property because we say we do," acquire or otherwise transfer those mineral interests, or any other interests in the property legally owned by others, to themselves. *See Panhandle Pipe & Supply Co. v. S.W. Pressey & Son,* 125 Colo. 355, 362, 243 P.2d 756, 760 (1952) (parties possessing no rights in real property interests are without power or authority to alter the ownership of those interests; "[o]ne without title to property can convey no title"); *GMAC Mortgage Corp. v. PWI Group,* 155 P.3d 556, 558 (Colo.App. 2006) (only the owner of an interest in real property "can encumber or convey the same"). Consequently, the trial court properly dismissed for failure to state a claim plaintiffs' complaint seeking entitlement to

additional royalty payments on oil and gas production from defendant's wells based on plaintiffs' "Declaration of Land Patent."

Our conclusion here is in accord with other jurisdictions that have addressed this issue. *See Glick,* 782 F.2d at 672 ("[F]ederal patents do not prevent the creation of later interests and have nothing to do with claims subsequently arising under state law."); *Leach v. Bldg. & Safety Eng'g Div.,* 993 F.Supp. 606, 607–08 (E.D.Mich.1998) (self-proclaimed land patent without legal effect); *Fed. Land Bank v. Kennedy,* 662 F.Supp. 787, 792 (N.D.Miss.1987) (same); *Hilgeford v. Peoples Bank,* 607 F.Supp. 536, 538 (N.D.Ind.1985) (same), *aff'd,* 776 F.2d 176 (7th Cir.1985); *Sui v. Landi,* 163 Cal.App.3d 383, 209 Cal.Rptr. 449, 449–50 (1985) (dismissing appeal without discussion and imposing sanctions); *Britt,* 106 Ill.Dec. 81, 505 N.E.2d at 392–93 (claim to superior title based on declaration of land patent was "meritless"); *Blair v. Emmert,* 495 N.E.2d 769, 772 (Ind.Ct.App.1986) (self-proclaimed land patent without legal effect); *Leibfried Constr., Inc. v. Peters,* 373 N.W.2d 651, 652 (Minn.Ct.App.1985) (same); *Gefroh,* 390 N.W.2d at 47 (rejecting argument that land patent exempts property from mortgage foreclosure); *Callison v. Huelsman,* 168 Ohio App.3d 471, 860 N.E.2d 829, 831 (2006) (rejecting argument that land patent exempts property from state taxes); *Charles F. Curry Co. v. Goodman,* 737 P.2d 963, 965 (Okla.Ct. App.1987) (claim to superior title based on declaration of land patent was "meritless"); *Fed. Land Bank v. Redwine,* 51 Wash.App. 766, 755 P.2d 822, 824 (1988) (land patent was "frivolous" and "had no effect on title").

### IV. Attorney Fees in the Trial Court

 Plaintiffs have not raised any challenge to the trial court's award of attorney fees in their opening brief. Accordingly, we do not consider that issue. *Federal Ins. Co. v. Ferrellgas, Inc.,* 961 P.2d 511, 514 (Colo. App.1997) (appellate court does not address arguments raised for the first time in a reply brief).

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

### V. Attorney Fees on Appeal

Citing C.A.R. 38(d), defendant contends it is entitled to attorney fees on appeal. We agree.

 If an appeal is determined to be frivolous, damages may be awarded pursuant to C.A.R. 38(d). *Wood Bros. Homes, Inc. v. Howard,* 862 P.2d 925, 934 (Colo.1993). Such damages may consist of the attorney fees and costs of the prevailing party. *Artes–Roy v. City of Aspen,* 856 P.2d 823, 828 (Colo.1993). Frivolous appeals include those that lack "any rational justification" as well as those "where the proponent failed to present a plausible argument in support of a novel claim." *Wood Bros. Homes,* 862 P.2d at 935.

[9] We conclude that plaintiffs' claim that their "Declaration of Land Patent" divests record owners of valuable mineral interests, for the reasons discussed above, is not supported by any plausible argument and is wholly lacking in rational justification. Therefore, an award of attorney fees on appeal is justified. *See Lego v. Schmidt,* 805 P.2d 1119, 1125 (Colo.App.1990); *Merrill Chadwick Co. v. October Oil Co.,* 725 P.2d 17, 19 (Colo.App.1986).

Accordingly, the judgment is affirmed and the case is remanded for an award of appellate attorney fees and costs in an amount to be determined by the trial court.

Judge STERNBERG * and Judge NEY * concur.

---

§ 24–51–1105, C.R.S.2009.