24CA0849 Marken v Knez 03-06-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0849
El Paso County District Court No. 22CV32210
Honorable Russell H. Granger, Judge

---

Steven S. Marken, in his capacity as Trustee of the John B. Servatius Living Trust,

Plaintiff-Appellee,

v.

Megan M. Knez, n/k/a Megan M. Graham, and Joseph J. Graham,

Defendants-Appellants.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE SCHOCK
Freyre and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 6, 2025

---

Mulliken Weiner Berg & Jolivet P.C., Murray I. Weiner, Colorado Springs, Colorado, for Plaintiff-Appellee

Dymond Reagor, PLLC, Michael W. Reagor, Greenwood Village, Colorado, for Defendants-Appellants

¶ 1    Defendants, Megan M. Knez, n/k/a Megan M. Graham, and Joseph J. Graham, appeal the district court's judgment declaring plaintiff, Steven S. Marken, in his capacity as trustee of the John B. Servatius Living Trust (JBS Trust), the legal owner of an undivided one-half interest in a cabin located on land owned by the Colorado Springs Fly Casting Club (the Club).  We affirm the judgment.

## I.    Background

¶ 2    For forty years, John Servatius and Mary Katherine Servatius (Megan's grandparents) jointly owned a fishing cabin at the Club.[1] Mary died in 2010, and her one-half interest in the cabin passed first to her estate and then to the Mary Katherine Servatius Family Trust (MKS Trust).  In 2014, John conveyed his one-half interest in the cabin to the JBS Trust.  Though conveyed by deed, the interest in the cabin constitutes personal property, not real property.

¶ 3    After these conveyances, the cabin was owned in undivided one-half interests by the MKS Trust and the JBS Trust.  The Edward Jones Trust Company served as trustee of the JBS Trust

---

[1] Because defendants share the same last name, as do John Servatius and Mary Katherine Servatius, we refer to them by their first names, intending no disrespect in doing so.

from 2014 to 2018, at which point Marken became the trustee of the JBS Trust. Marken is also the trustee of the MKS Trust.

¶ 4 In September 2016, John signed a quitclaim deed as trustee of the JBS Trust, purporting to convey the JBS Trust's interest in the cabin to Megan and Joseph. John was not the trustee of the JBS Trust at the time, nor did he personally have any ownership interest in the cabin. Megan and Joseph then signed a bill of sale purportedly transferring their interest in the cabin to Megan individually. John transferred his membership in the Club to Megan around the same time. John died in November 2016.

¶ 5 In 2022, amidst a dispute among the JBS Trust beneficiaries over ownership of the cabin, Marken filed a declaratory judgment action against defendants, seeking a declaration that the 2016 quitclaim deed and bill of sale were void and did not convey the JBS Trust's interest in the cabin to defendants. Defendants filed counterclaims seeking a declaration that Megan was the owner of the cabin and reformation of the deed to accomplish that result.

¶ 6 After a two-day bench trial, the district court ruled in favor of the JBS Trust and against defendants. It found that (1) the 2016 quitclaim deed was void because John was not the trustee of the

2

JBS Trust and therefore had no authority to convey its interest in the cabin; (2) the cabin was owned in undivided one-half interests by the JBS Trust and the MKS Trust; and (3) defendants had no interest in the cabin (other than Megan's interest as a beneficiary of the two trusts). The court awarded defendants approximately $20,000 for costs they had incurred for work on the cabin.

## II. Standard of Review

¶ 7  Our review of a judgment after a bench trial presents a mixed question of fact and law. *State ex rel. Weiser v. Ctr. for Excellence in Higher Educ., Inc.*, 2023 CO 23, ¶ 33. We review the district court's factual findings for clear error and its legal conclusions de novo. *Kroesen v. Shenandoah Homeowners Ass'n*, 2020 COA 31, ¶ 55.

¶ 8  In conducting this review, we defer to the district court's credibility determinations and its assessment of the weight and probative effect of the evidence. *Amos v. Aspen Alps 123, LLC*, 2012 CO 46, ¶ 25; *Saturn Sys., Inc. v. Militare*, 252 P.3d 516, 521 (Colo. App. 2011). We will not disturb its factual findings unless they are clearly erroneous and unsupported by the record. *Amos*, ¶ 25.

¶ 9  It is the appellant's responsibility to provide an adequate record for review. *Gomez v. Walker*, 2023 COA 79, ¶ 40. To meet

this burden, the appellant must include in the record transcripts of all proceedings necessary for considering and deciding the issues on appeal. C.A.R. 10(d)(3). When, as in this case, the appellant fails to provide a transcript of the trial, we must presume the record supports the judgment. *In re Marriage of Dean*, 2017 COA 51, ¶ 13.

### III. Statute of Limitations

¶ 10 Defendants first argue that the district court erred by concluding that Marken's claim that the 2016 quitclaim deed was void was not barred by the statute of limitations. We disagree.

¶ 11 A void deed is a "legal nullity" that "does not, and cannot, convey title." *Perfect Place, LLC v. Semler*, 2018 CO 74, ¶ 50. It is "invalid ab initio, or from the beginning, for any purpose." *Delsas v. Centex Home Equity Co., LLC*, 186 P.3d 141, 144 (Colo. App. 2008). Thus, when a deed is void, the statute of limitations will not apply because there is "nothing for the statute to operate upon." *Lake Canal Reservoir Co. v. Beethe*, 227 P.3d 882, 888 (Colo. 2010) (citation omitted). Such a deed has no legal effect, and it cannot somehow develop a legal effect with the passage of time. *See id.*

¶ 12 In this case, when John executed the quitclaim deed, he was neither the owner of the cabin nor the trustee of the JBS Trust,

4

which did own it. He therefore had no authority to convey the cabin to anyone — whether on behalf of himself or the JBS Trust. *See Panhandle Pipe & Supply Co. v. S.W. Pressey & Son*, 243 P.2d 756, 760 (Colo. 1952) ("One without title to property can convey no title."); *In re Estate of McCreath*, 240 P.3d 413, 422 (Colo. App. 2009) ("[A] quitclaim deed is ineffective to transfer a title not vested in the transferor at the time of its execution."). That made the deed void on its face. *See Lake Canal Reservoir Co.*, 227 P.3d at 889 ("A deed is void — and therefore not subject to the statute of limitations — when the [issuing] entity lacked the authority . . . to issue it.").

¶ 13     Defendants could not rely on the statute of limitations to obtain title to the cabin from someone who did not own it. *Cf. Hamilton v. Noble Energy, Inc.*, 220 P.3d 1010, 1013 (Colo. App. 2009) (holding that plaintiffs could not acquire property legally owned by others by "filing a self-created" document "that says, in effect, 'we own the described property because we say we do'").

¶ 14     Defendants attempt to confine *Lake Canal Reservoir* and its statute of limitations exception for void deeds to (1) tax deeds (2) for real property, arguing that this case involves neither. But although those were the facts of *Lake Canal Reservoir*, the rationale for the

5

exception does not depend on the type of deed or the nature of the property in question. Instead, the statute of limitations does not apply because, when a grantor lacks the authority to convey the property, there is no legally cognizable transaction that would start the limitations period running. *See Lake Canal Reservoir*, 227 P.3d at 888; *see also Perfect Place*, ¶ 50. That rationale applies with equal force to a private "conveyance" of personal property by a non-owner as it does to an unauthorized tax deed for real property.

¶ 15 Defendants assert that Marken's claim was effectively an action for replevin subject to the three-year statute of limitations in section 13-80-101(1)(h), C.R.S. 2024. But defendants did not raise this argument in the district court — at least not anywhere in the record before us. Although defendants argued that *other* subsections of section 13-80-101(1) barred Marken's claim, they never cited subsection (h) or asserted that Marken's claim was one for replevin. We therefore will not consider this new argument for the first time on appeal. *See Franklin D. Azar & Assocs. P.C. v. Ngo*,

2024 COA 100, ¶ 51 ("We 'review only the specific arguments a party pursued before the district court.'") (citation omitted).[2]

¶ 16    In any event, even if we were to consider the issue, we are not persuaded that Marken's claim is an "action[] of replevin or for taking, detaining, or converting goods or chattels." § 13-80-101(1)(h). Replevin is a possessory action in which "a claimant seeks to recover both possession of personal property that has been wrongfully taken or detained and damages for its unlawful detention." *Woo v. El Paso Cnty. Sheriff's Off.*, 2022 CO 56, ¶ 9 (citation omitted). Marken did not allege that defendants had wrongfully taken or detained the cabin. Nor did he, through his claim, seek possession of the cabin or damages for its unlawful detention. Instead, he simply asked the court to declare the deed by which defendants had purportedly acquired the cabin void.

¶ 17    Defendants also contend that the district court erred by relying on section 38-41-108, C.R.S. 2024, which allows a person to

---

[2] Defendants assert for the first time in their reply brief that, perhaps, the two-year catch-all limitation period for "[a]ll other actions of every kind for which no other period of limitation is provided" would apply. § 13-80-102(1)(i), C.R.S. 2024. We will not consider an argument first raised in a reply brief. *See Sandra K. Morrison Tr. v. Bd. of Cnty. Comm'rs*, 2020 COA 74, ¶ 30.

become the legal owner of property by possessing it under good faith color of title for seven years. We agree that the court's discussion of this statute was unnecessary because defendants did not claim ownership of the cabin under this theory. But section 38-41-108 is not a statute of limitations, and the court did not treat it as one. It instead considered it as an alternative means by which defendants might have claimed ownership of the cabin, if Marken had not challenged the 2016 deed sooner. In doing so, the court correctly noted that "[t]he statute of limitations is inapplicable."

## IV. Trust Ownership of Cabin

¶ 18    Defendants next argue that the district court erred by finding that the JBS Trust and MKS Trust owned the cabin, ostensibly in violation of the Club bylaws. They contend that the bylaws prohibit trusts from owning cabins and that the 2010 and 2014 deeds to the MKS Trust and the JBS Trust were therefore void. Because the record supports the district court's conclusion, we disagree.[3]

---

[3] Although defendants are not clear as to the relief they seek on this issue, their theory seems to be that if the JBS Trust could not own the cabin, then John still owned it personally and could convey it to Megan. We note that this theory is inconsistent with the 2016 quitclaim deed, which John signed *as trustee of the JBS Trust.*

¶ 19     As a general rule, "[a] trust may acquire, convey . . . or otherwise deal with any interest in real or personal property in the name of the trust." § 38-30-108.5(1), C.R.S. 2024.  And "title to an interest in real or personal property may be held by or on behalf of a trust in any . . . manner permitted by law." § 38-30-108.5(3).  Thus, under Colorado law, the JBS Trust and the MKS Trust were permitted to acquire the cabin and hold title in it.  The record supports the district court's finding that they did so, having received deeds to the cabin from John and Mary, respectively.

¶ 20     Defendants nevertheless argue that the Club bylaws prohibit trusts from owning cabins.  They rely on the following provision:

> Title to a Membership shall be vested in one individual - the Regular Member.  However, title to improvements may be held in joint tenancy by a Member and spouse.  Groups, corporations, partnerships or associations of any nature, whatsoever, directly or indirectly, are specifically excluded from Membership.

The bylaws also list ownership of a cabin as a privilege of the Club members.  Defendants reason that if (1) cabin ownership is a privilege of membership in the Club, and (2) only individuals can be members, then (3) only an individual can own a cabin.

¶ 21    As an initial matter, we note that the Club bylaws do not expressly prohibit entities such as trusts from owning cabins. Indeed, the relevant provision distinguishes between title to membership, which *must* be vested in an individual, and title to improvements, which *may* be held in joint tenancy by a member and spouse.  And the clause that excludes associations from *membership* says nothing about ownership of *cabins*.

¶ 22    Moreover, the district court found — and we must presume the record supports, *Dean*, ¶ 13 — that Club membership and cabin ownership were "bifurcat[ed]" and transferred separately as part of a "two-step process."  While only an individual may be a member, "numerous trusts have held and continue to hold title to cabins."  The district court also found that, upon death of a member, the Club allows the member's estate to hold ownership of a cabin, pending the transfer of a cabin to the new member.  This finding supports the district court's conclusion that the Club bylaws do not strictly prohibit trusts from owning cabins.

¶ 23    But we need not decide whether the Club bylaws restrict ownership of the cabins to individuals because such a restriction would not automatically void the JBS Trust's title.  At most, it

might place the associated member in breach of their contract with the Club. *See Jorgensen Realty, Inc. v. Box*, 701 P.2d 1256, 1257 (Colo. App. 1985) ("The relationship between a voluntary association and its members is a contractual one . . . ."); *cf. Bloom v. Nat'l Collegiate Athletic Ass'n*, 93 P.3d 621, 625-26 (Colo. App. 2004) (analyzing claimed violation of bylaws as a breach of contract).

¶ 24    As the district court found, the Club responds to such alleged breaches not by declaring the transfer void but by seeking to compel transfer of the cabin to a member and imposing fines or other penalties if the transfer is not made. Indeed, defendants concede in their opening brief that the Club cannot "prevent an improper transfer" but can "force members to remedy a breach with a threat of penalty." Or alternatively, as with any breach of contract, the Club may choose not to do anything at all — to allow the transfer to stand — as it has done with numerous cabins held by trusts or estates. For example, with respect to John's cabin in particular, the Club president explained in an email to members that the Club chose not to take action "[d]ue to John's frail health."

¶ 25    In either case, the record supports the district court's finding that John and Mary's interests in the cabin were conveyed to the

JBS Trust and the MKS Trust, respectively. If the Club believes those conveyances, and the trusts' resulting ownership of the cabin, violate the bylaws, it can take whatever action it deems appropriate to enforce its contractual rights. In the meantime, title remains in the trusts unless and until it is validly transferred to someone else.[4]

¶ 26 Defendants' reliance on section 7-126-202(1), C.R.S. 2024, fares no better. That statute provides that "[u]nless otherwise provided by the bylaws, no member of a nonprofit corporation may transfer a membership or any right arising therefrom." *Id.* But as noted above, the district court found that the transfer of the membership is distinct from the transfer of the cabin. This case involves only the latter, making section 7-126-202(1) inapposite. Moreover, even if the *right* to own and use the cabin could be considered a "right arising" from membership, nothing in the

---

[4] Defendants cite *Estate of Rogers v. Estate of Rogers*, 366 So.3d 911, 922-23 (Miss. Ct. App. 2023), for the proposition that a transfer of a club membership and a cabin in violation of club bylaws would be void. But that case dealt with the transfer of a *membership* under bylaws that expressly provided that such a transfer was void. *See id.* at 917. The court did not separately address the validity of the transfer of the cabin. Moreover, the court in that case ultimately concluded that the transfer was *not* void because it could be reconciled with the bylaws. *Id.* at 924-25.

statute indicates that a transfer of personal property in violation of the statute is void — as opposed to, for example, providing a ground for terminating the membership. *See* § 7-126-302, C.R.S. 2024.

¶ 27    Thus, because John conveyed his interest in the cabin to the JBS Trust and the JBS Trust did not validly convey its interest to anyone else, the district court correctly concluded that the JBS Trust continues to hold an undivided one-half interest in the cabin.

## V.    Indispensable Party

¶ 28    Defendants also contend that the district court abused its discretion by denying their motion for a continuance on the first day of trial to add the Club as an indispensable party. They argue that the Club had an interest in the action because Marken's claim necessarily required the court to determine whether its bylaws prohibited the JBS Trust from owning the cabin. We disagree.

### A.    Adequacy of Record and Preservation

¶ 29    Again, we are somewhat hamstrung in our review of this issue by defendants' failure to provide a transcript. *See Gomez*, ¶ 40; *Dean*, ¶ 13. The record does not reflect what defendants argued at trial or the basis for the district court's ruling. And the minute order — the only reference to the ruling in the record — simply

13

states that defendants' "motion to continue trial to add another party" was denied "due to being untimely." The only mention in the record of the Club being an indispensable party came in a single sentence in the proposed trial management order.

¶ 30 Nevertheless, because the issue does not require the resolution of factual disputes better resolved by the district court, we will address it on appeal. *See Clubhouse at Fairway Pines, L.L.C. v. Fairway Pines Ests. Owners Ass'n*, 214 P.3d 451, 454-55 (Colo. App. 2008) (considering indispensable party argument that was raised for the first time after trial and noting that, in some circumstances, issue may be raised for the first time on appeal).

¶ 31 In doing so, we reject Marken's suggestion that defendants waived their argument by not raising it in their answer or counterclaims. Under C.R.C.P. 12(h)(2), a defense of failure to join a party under C.R.C.P. 19 may be made "at the trial on the merits." *See also Clubhouse at Fairway Pines*, 214 P.3d at 455 (noting that, under federal analogue to C.R.C.P. 12(h), the defense of failure to join an indispensable party is "expressly preserved against waiver").

## B. Standard of Review and Applicable Law

¶ 32 We review the district court's determination of whether a party is an indispensable party and its denial of a continuance for an abuse of discretion. *Makeen v. Hailey*, 2015 COA 181, ¶ 45; *Cherry Creek Sch. Dist. No. 5. v. Voelker*, 859 P.2d 805, 809 (Colo. 1993). A district court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or when the court misapplies or misapprehends the law. *Jordan v. Terumo BCT, Inc.*, 2024 CO 38, ¶ 26. When the district court's joinder decision turns on questions of law, we review those issues de novo. *See Accetta v. Brooks Towers Residences Condo. Ass'n, Inc.*, 2019 CO 11, ¶ 14.

¶ 33 C.R.C.P. 19(a) provides that a person must be joined as a party if (1) in the party's absence, complete relief cannot be afforded among those already parties; or (2) the absent party claims an interest relating to the subject of the action and is so situated that disposition of the action in the party's absence may "[a]s a practical matter impair or impede [the party's] ability to protect that interest" or leave the parties "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." C.R.C.P. 57(j) and section 13-51-115, C.R.S. 2024, similarly require joinder

15

in a declaratory judgment action of all persons who "have or claim any interest which would be affected by the declaration."

¶ 34 But an absent party's mere interest in the outcome of the action does not require joinder. *Accetta*, ¶ 17. Joinder is required only when the absent party's "ability to protect their interests would be impaired or impeded due to their absence, as, for example, when a requested declaratory judgment could prejudice their rights." *Id.* Thus, even when an absent party's rights are implicated, joinder may not be required "when the interests of the absent parties were aligned with those of any of the present parties." *Id.* at ¶ 20.

## C.    Analysis

¶ 35 We perceive no abuse of discretion in the district court's decision not to continue trial to allow defendants to add the Club as an indispensable party because the action does not, legally or practically, impair or impede the Club's ability to enforce its bylaws.

¶ 36 This case solely concerned ownership of the cabin and, more specifically, the validity of the 2016 quitclaim deed purporting to convey the cabin from the JBS Trust to Megan. As we have explained above, that issue is entirely separate from whether such ownership violated the Club's bylaws. The district court could

16

determine that the JBS Trust owned legal title to the cabin without impairing or impeding the Club's ability to take action against the JBS Trust or its associated member for breaching the Club bylaws. Indeed, that is exactly what the district court did — expressly noting that its interpretation of the bylaws did not bind the Club or limit how the Club may respond to the JBS Trust's ownership.

¶ 37    Moreover, to the extent the district court interpreted the bylaws in its ruling, the record supports the conclusion that the Club's interests were adequately protected by defendants. *See Accetta*, ¶ 18. Defendants advanced the same interpretation of the bylaws offered by the Club, presented an email from the Club president detailing the basis for that interpretation, and even called the Club president to testify about that interpretation. Defendants also were motivated to advocate for that interpretation because their argument turned in large part on the theory that the JBS Trust could not own the cabin. Thus, the interests of the Club were directly aligned with those of defendants. *See id.* at ¶ 20.

¶ 38    Defendants argue that they could not adequately represent the interests of the Club because they were concerned only with the ownership of this one cabin, while the Club's interest extends to all

17

the cabins in the Club. But this case did not implicate the ownership of any other cabin — much less does it preclude the Club from enforcing its bylaws against other members. As we have noted, it does not even preclude the Club from enforcing its bylaws against the JBS Trust or its associated member. Perhaps tellingly, despite its awareness of the case, the Club never moved to intervene. *See* C.R.C.P. 24(a) (allowing intervention of right under the same circumstances as joinder under C.R.C.P. 19(a)(2)(A)). It is only defendants who now claim prejudice to the Club's interests in an apparent effort to get a second chance to persuade the district court of a legal theory it already rejected. *Cf. Clubhouse at Fairway Pines*, 214 P.3d at 455 (distinguishing a party's assertion of an indispensable party argument "to protect the interests of absent parties" from an assertion of the argument "to protect itself").

## VI. Appellate Attorney Fees

¶ 39 Marken requests an award of his appellate attorney fees under section 13-17-102(2), C.R.S. 2024, on the ground that this appeal lacked substantial justification. We deny that request. Although we have ruled against defendants, their arguments were not so lacking in substantial justification as to warrant an award of fees.

*See In re Marriage of Boettcher*, 2018 COA 34, ¶ 38 ("Fees should be awarded only in clear and unequivocal cases when the appellant presents no rational argument, or the appeal is prosecuted for the purpose of harassment or delay."), *aff'd*, 2019 CO 81.

## VII.   Disposition

¶ 40    The judgment is affirmed.

JUDGE FREYRE and JUDGE SULLIVAN concur.